DAHN v. McADOO, Director General of Railroads, et al.

(District Court, N. D. Iowa, E. D., at Dubuque. April 16, 1919. On Demurrer to Particular Counts of Answer, May 2, 1919.)

No. 167.

1. RAILROADS ⬩5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—ACTIONS.

Under Act Aug. 29, 1916, authorizing President to take over transportation systems, President's proclamation of December 26, 1917, delegating control to Director General of Railroads, Federal Control Act, § 10 (Comp. St. 1918, § 3115¾j), and General Order No. 50 of Director General, a personal injury action commenced subsequent to General Order No. 50 on a cause of action occurring during federal operation may be maintained against Director General of Railroads.

2. MASTER AND SERVANT ⬩354—FEDERAL EMPLOYERS' LIABILITY—EXCLUSIVENESS.

The federal Employers' Compensation Act (Comp. St. §§ 8932a–8932uu) does not provide an exclusive remedy, so as to preclude a railway mail clerk from maintaining a personal injury negligence action against the Director General of Railroads.

On Demurrer to Particular Counts of Answer.

3. UNITED STATES ⬩125—SUITS AGAINST—FEDERAL CONTROL.

Under Act Aug. 29, 1916, authorizing President to take over transportation systems, President's proclamation of December 26, 1917, delegating control to Director General of Railroads, Federal Control Act, § 10 (Comp. St. 1918, § 3115¾j), and General Order No. 50 of Director General, directing that certain actions be brought against him, a personal injury action against the Director General is not precluded, upon the ground that it is a suit against the United States without its consent.

4. RAILROADS ⬩5½—FEDERAL CONTROL—PROCESS.

Under Act Aug. 29, 1916, President's proclamation of December 26, 1917, Federal Control Act, § 10 (Comp. St. 1918, § 3115¾j), and General Order No. 50 of the Director General, regulating federal operation and control of railroads, no process will issue on judgment against Director General which will interfere with his possession of railroad property committed to his control.

At Law. Action by Arthur Dahn against William G. McAdoo, Director General of Railroads, and the Illinois Central Railroad Company. On demurrers by the Director General to the petition and by plaintiff to certain counts of the answer. Demurrer of the Director General overruled, and that of plaintiff sustained.

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This action was commenced November 22, 1918, to recover damages for a personal injury sustained by the plaintiff on May 29, 1918, while employed as a United States railway mail clerk upon the Illinois Central Railroad, because of the alleged negligence of the railroad company in the construction and maintenance of its track, bridges, and roadbed, and the employés operating the train upon which the plaintiff was so employed.. The defendant railroad company, at the time of such injury, had been taken over by the President under the act of Congress approved August 29, 1916 (39 Stat. p. 645, c. 418), and was being operated by the Director General of Railroads in the prosecution of the war against the Imperial German government.

The action was brought originally in this court against the railroad company and William G. McAdoo then Director General of Railroads, in the manner and as authorized by the statutes of Iowa in suits brought against railroad companies in that state.    At the December term, 1918, of this court, the defendants separately appeared, and each moved to dismiss the action against him, respectively, upon the ground that under General Order No. 50, promulgated by the Director General of Railroads on October 28, 1918, the action could not rightly be maintained against either the railroad company or the Director General of Railroads. The motion was sustained as to the defendant Illinois Central Railroad Company because of said General Order No. 50; but the motion as to the Director General was overruled, and orders were duly entered of record accordingly on December 5, 1918.

The Director General was granted leave to file a demurrer to the petition within a time stated, should he be so advised, and on December 16, 1918, filed a demurrer to the petition challenging the right of the plaintiff to maintain the action as against him substantially upon the grounds:

(1) That the action was commenced after the promulgation by Director General McAdoo on October 28, 1918, of General Order No. 50, and cannot therefore be maintained against either defendant.

(2) That the injury to the plaintiff and damages claimed by him occurred after the 28th day of December, 1917 (when the transportation systems of the United States were taken over by the President, and the operation thereof placed under the control of the Director General of Railroads), and the Director General is not liable for any damages suffered by the plaintiff thereafter.

(3) That neither the Director General nor the government is in any event liable for injuries received by the plaintiff (who the petition shows was a railway mail clerk upon the Illinois Central Railroad in the performance of his duties as such clerk), for the act of Congress approved September 7, 1916 (39 Stat. p. 742, c. 458 [Comp. St. §§ 8932a–8932uu]), providing "compensation for employés of the United States suffering injuries while in the performance of their duties," excludes any other recovery or method of recovery by civil employés of the United States for injuries suffered by them in the performance of their duties than in said act provided, and the claim presented by the plaintiff in this action shows no cause of action upon which a recovery may be had against the Director General of Railroads, or against the government.

Hurd, Lenehan, Smith & O'Connor, of Dubuque, Iowa, for plaintiff.
Helsell & Helsell, of Ft. Dodge, Iowa, and Mr. Fletcher, of Chicago, Ill., for defendant Director General.

REED, District Judge (after stating the facts as above).    [1] The first ground of the demurrer is substantially a repetition of the motions to dismiss the action against both defendants, and, in view of the ruling heretofore made on those motions, needs but little consideration.   By the act of Congress approved August 29, 1916, it is provided:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transpor-

tation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable." 39 Stat. p. 645, c. 418 (Comp. St. § 1974a).

Pursuant to that authority the President on December 26, 1917, issued his proclamation, in which, among other things, it is recited:

"It is hereby directed that the possession, control, operation and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads. Said Director may perform the duties imposed upon him, so long and to such extent as he shall determine, through the boards of directors, receivers, officers and employés of said systems of transportation. Until and except so far as said Director shall from time to time by general or special orders otherwise provide, the boards of directors, receivers, officers and employés of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers in the names of their respective companies.

"Until and except so far as said Director shall from time to time otherwise by general or special orders determine, such systems of transportation shall remain subject to all existing statutes and orders of the Interstate Commerce Commission, and to all statutes and orders of regulating commissions of the various states in which said systems or any part thereof may be situated. But any orders, general or special, hereafter made by said Director, shall have paramount authority and be obeyed as such." Comp. St. § 1974a.

By the act of Congress approved March 21, 1918, called the Federal Control Act, it is provided in section 10 thereof:

"Sec. 10. That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. Nor shall any such carrier be entitled to have transferred to a federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the federal control of such carrier. * * * But no process, mean or final, shall be levied against any property under such federal control." 40 Stat. p. 451, c. 25 (Comp. St. 1918, § 3115¾j).

On October 28, 1918, pursuant to such act of Congress and the proclamation of the President, the Director General promulgated General Order No. 50, which, so far as deemed material, is as follows:

"Whereas, since the Director General assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during federal control for which the said carrier corporations are not responsible, and it is right and proper that the actions, suits, and proceedings hereinafter referred to, based on causes of action arising during or out of federal control should be brought directly against the Director General of Railroads and not against said corporations:

"It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad system of transportation by the Director General of Railroads, which action, suit or proceeding but for federal control might have been brought against the carrier com-

pany, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise. * * *

"Subject to the provisions of General Orders numbered 18, 18a, and 26, heretofore issued by the Director General of Railroads, service of process in any such action, suit or proceeding may be made upon operating officials operating for the Director General of Railroads, the railroad or other carrier in respect of which the cause of action arises in the same way as service was heretofore made upon like operating officials for such railroad or other carrier company.

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

It seems entirely clear, therefore, that under the acts of Congress referred to the President was fully empowered in time of war to take possession and assume control of the entire system or systems of transportation of the United States through the Secretary of War and place them under the control of a Director General of Railroads to manage and operate the same during the period for which possession of them was taken, and that actions or claims for damages arising out of the operation and control of such systems may be brought and prosecuted to final judgment against the Director General under the orders promulgated by him therefor. Of course the possession and control of the property of the railway systems so placed in the possession, and under the control of, the Director General may not be disturbed or interfered with under judgment or other proceedings against him; but as the judgment, or other process of the court that may be rendered against him, is and will remain under its control, it will not permit its process to interfere with his custody or control of such property.

The reasons assigned in General Order No. 50, that "suits are being brought and judgments and decrees rendered against carrier corporations on causes of action arising during federal control for which the said carriers are not responsible," is a sufficient and very proper precaution for requiring that such actions and proceedings should be brought against the Director General that he may properly defend against such actions and not intrust their defense to the carrier corporations.

This ground of the demurrer is therefore overruled.

[2] It is next urged in support of the demurrer that plaintiff, a railway mail clerk, at the time of his alleged injury, can recover for that injury, if at all, only under the "Federal Employés' Compensation Act" of Congress, approved September 7, 1916, hereinbefore referred to.

The petition alleges that the plaintiff was an employé of the government, in the performance of his duties as a mail clerk upon the Illinois Central Railroad in Iowa, at the time of the accident which resulted in the injuries of which he complains. The Congress, in the act to which reference is above made, has imposed upon the United States a liability for injuries to its employés when in the performance of their

duties, except under the conditions prescribed in the act; and it may be that the Congress might have required the injured employé to seek redress ·for such disability or injury exclusively from the United States, and in the manner provided in the act. New York Central R. R. v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629, and cases cited; and New York Central R. R. v. Winfield, 244 U. S. 147, 150, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139. But, be this as it may, the Congress has not done so. By section 1 of that act it is provided:

"That the United States shall pay compensation as hereinafter specified for the disability or death of an employé resulting from a personal injury sustained while in the performance of his duty," except under the conditions prescribed in the act. Comp. St. § 8932a.

Other sections of the act provide in detail the method and procedure by which the injured employé may recover from the United States the compensation therein provided for such injury. That a mail clerk employed by the United States upon a mail car used in the carriage of mails upon railroads is an employé of the United States, within the meaning of this act, is not doubted, nor is it disputed, and when such an employé is disabled or killed in the performance of his duties, and seeks to recover from the United States the compensation so provided, it is obvious that he must proceed in the manner provided by this act. But in no part of the act is it directly or by reasonable implication provided that the injured employé or his legal representatives shall be limited to the amount of compensation so provided in this act as against a wrongdoer, who by some negligent or other wrongful act has caused the death or disability of the injured employé, and to so prohibit would be to amend the act, which the court will not do.

This ground of the demurrer is also overruled, and it is accordingly so ordered.

On Demurrer to Particular Counts of Answer.

[3] After the above order of April 16, 1919, overruling the demurrer of the Director General to the petition, that defendant answered the petition in six counts or divisions, in which he sets up in counts 3, 4, 5, and 6 substantially the same grounds set forth in his demurrer to the petition, in which he again urges that under the Federal Control Act of March 21, 1918, suits cannot rightly be maintained against the Director General of Railroads, for the reason that such a suit would in effect be an action against the United States, which is not permissible in any case, unless by the consent of the Government, which consent it is claimed is not given either by the Federal Control Act, or any other act of Congress, or proclamation or order of the President.

This it seems to me is a misconception of the act of Congress approved August 29, 1916 (39 Stat. p. 635, c. 418 [Comp. St. § 1974a]), authorizing the President in time of war to take possession and assume control of the transportation systems of the United States and utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transportation of troops, war materials, equip-

ment, and such other purposes connected with the emergency which brought the United States into the war with the Imperial German government, and the proclamation of the President taking over such transportation systems through the Secretary of War and placing them under the control of the Director General of Railroads to manage and operate the same.

That the Congress in time of war, which then existed, had full power to confer such authority upon the President can hardly be doubted, and by conferring it upon the President the Congress assumed as an obligation of the United States to compensate the owners of such systems for so taking possession and control thereof in defense of the government in the war thrust upon it by the German government, and under the proclamation of the President the Director General is authorized to perform the duties imposed upon him and to such extent as he may determine through the boards of directors and other officers and employés of such railway transportation systems as the Director General shall from time to time by general or special order authorize, and providing that the boards of directors, officers, and employés of the transportation systems shall continue their operation in the usual and ordinary manner of the business of common carriers.

And by the Federal Control Act it is provided in section 10 thereof:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. * * *"

On October 28, 1918, pursuant to such act and proclamation of the President, the Director General promulgated General Order No. 50, which among other things provides:

"It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to the person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, * * * shall be brought against the Director General of Railroads alone and not otherwise."

The Director General is therefore authorized by this act of Congress and proclamation of the President to promulgate general and special orders for the control and management of the railroads, which have the force and effect of law and are of paramount authority; and by this declaration of Congress and the General Orders of the Director General the government has taken possession and control of the transportation systems, and has become obligated to them for their rental value or use in the prosecution of the war, and has power to compensate them for such use; and as the Director General by General Order No. 50 directs that actions at law, suits in equity, and other proceedings based on *contract binding upon him*, or claim for death or injury to the person, or for loss and damage to property, shall be brought against him and not otherwise, the Congress through

such officers has assumed complete control of such transportation systems, provided for the manner they shall be compensated and paid for the use of their respective systems, and they shall be liable to suits and other liabilities during federal control, and that suits shall be brought against the Director General alone, and has thus consented that suits may be brought against the Director General of Railroads (if consent is necessary, which it is not intimated that it was or is).

[4] If judgment shall be recovered against the Director General, no process shall be issued upon such judgment that will interfere with the possession of the property under his custody; but he may provide for the payment of such judgment from the income or other funds under his control, or the Congress may otherwise provide for its payment as it may see fit.

The demurrer of the plaintiff to counts 3, 4, 5, and 6 of defendant's answer and each thereof is sustained, to which ruling the defendant excepts.