## UNICA v. UNITED STATES.

(District Court, S. D. Alabama. March 2, 1923.)

1. Seamen ⊜⟹11—Ship is liable for negligence in care of seaman.

The ship owes a seaman the duty of maintenance and care, and, when there is negligence in the performance of that duty, the ship and the owner are liable in damages.

2. Seamen ⊜⟹11—Master owes seriously injured seaman duty of speedy removal to hospital.

Where a seaman is seriously injured, and there is no surgeon on the boat, it is the duty of the master to have him taken speedily to a hospital, where he can be treated.

3. Seamen ⊜⟹11—Liability for failure to take seriously injured seaman to hospital.

Where a seaman had his wrist broken and his back injured by a fall, and his legs and internal organs were paralyzed, he was so seriously injured that the master should have taken him to a hospital at a port

which would have resulted in but slight deviation from the vessel's course, or, if the seaman waived his right to be taken to that hospital, the master was negligent in failing to have him removed to a hospital at the ship's destination for six days after the arrival of the ship in that port.

In Admiralty. Libel by Basilio Unica against the United States. Decree rendered for libelant.

V. F. Kilborn and Inge & Bates, all of Mobile, Ala., for libelant.

Pillans, Cowley & Gresham, of Mobile, Ala., for respondent.

ERVIN, District Judge. This was a libel by the assistant cook, a Filipino, who accidentally fell about 30 feet into the hold of the vessel, January 25, 1922, and was badly bruised and suffered a Colles fracture of the left wrist. The fall also left him with his right leg partially paralyzed, and some injury to the nerves of his lower back. He was raised from the hold after being given first aid, and examined. His wrist seemed to have been knocked out of joint, and this was pulled into place, and the forearm was painted with iodine, which blistered it, and then put into a bandage. He was put to bed, where he remained on the vessel until February 6th.

From the time of the injury until he was placed in the Marine Hospital at Mobile, he seemed to be suffering from a paralysis of the muscles of the bladder and rectum, and to have suffered greatly. One of the firemen, a Filipino, and the wireless operator seem to have waited on him and given him such care as they could, in the absence of any surgeon on the steamer.

The steamer was coming to Mobile light from Hull, England, and had arrived at latitude 33° 28′ N., longitude 61° 20′ W., when the accident happened, and it was duly entered on the log. This location was between the Bermudas and the Florida coast. The vessel came within about five miles of Key West, where there was a Marine Hospital, and it took about two days more to get to Mobile, where she arrived late in the afternoon of February 1st. On the morning of the 2d the master telephoned for a surgeon, who came about an hour later, and found the ship on the dry dock.

Dr. Haas, the surgeon, testified to the man's condition and that he advised that he be sent to the hospital. He says that he was told the vessel would be off the dry dock that afternoon, and he then told them it would be all right to wait till she was off, as it would be difficult to get the injured man off the vessel while she was on the docks. The master claims the doctor merely told him to wait till the vessel left the docks. The vessel stayed on the docks about three days, then went up the river and took oil, and it was late on the 6th before the man was sent to the hospital.

[1] Damages are claimed, not because of the initial injury, but because of the negligence of the master in not getting the seaman into a hospital sooner, so he could receive proper surgical attention. The ship owes the seaman the duty of maintenance and care, and when there is negligence in the performance of this duty the ship and owner is liable in damages.

[2] Where a seaman is seriously injured, and there is no surgeon on the boat, it is the duty of the master to have him taken speedily to a hospital, where he can be treated. The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955; Wittikoppe v. N. Y. & P. S. S. Co. (D. C.) 189 Fed. 920.

[3] Was this man so seriously injured as to require his being put into a hospital? The chief mate says:

"The captain and I both examined him, and we came to the conclusion that he was not more than badly shaken up, and maybe hurt internally."

Again, speaking of the second day after the accident:

"He said he felt better, and didn't feel like he was seriously injured. * * * He said he didn't think he was hurt, and we asked him if he was content to remain there until he arrived at Mobile, and he said he was, and Unica said that he wanted to go to the hospital as soon as he arrived, to see if he was seriously injured internally."

Speaking again of what Dr. Haas, the surgeon in Mobile, advised:

"He said he couldn't tell, from a cursory examination of the man, whether he was injured seriously internally or not, but he would have to be examined in the hospital."

Again:

"Wasn't this man paralyzed from the waist down, from the time he was hurt?" "No, sir." "Wasn't he in such a shape that he couldn't urinate?" "He found difficulty in urinating."

This mate also testified he saw no necessity of putting into any port to put the man into a hospital.

The captain testified to what was done with the man after the accident, and that thereafter he visited him every day; that he gave him medicine to keep his bowels open, and spirits of niter, as he had trouble with his urine; that he saw no necessity of diverting the boat from her course to put him in a hospital.

The steward testifies that he was up with the man nearly all night the first two or three nights; that it did not appear to him as if Unica got any worse from the time he was hurt till he was taken off the ship at Mobile.

The second mate, speaking of finding libelant after his fall, says:

"He was stretched out and groaning, making a kind of funny noise, and we tried to get him to talk, and could not, and we administered first aid down there. * * * He seemed to hurt his back and could not talk."

Speaking of Unica's legs:

"We moved them for him. He was badly hurt, or seemed to be, and we didn't ask him to move them."

Speaking of Unica's condition after the injury, while on the boat, he says:

"I tried to get some sense out of him, and he would not talk. He would lay there and moan."

The third mate says:

"He complained of his back hurting him, and one of his legs being a little numb, having a loss of feeling in it."

Looking to this testimony of the officers of the vessel alone, without considering that of libelant, it seems clear to me he was badly hurt, and probably suffering from internal injury, and the master should have speedily put him in a hospital, and as the one at Key West was fairly close, and right on his route, he should have been taken there. Later developments have shown that libelant was kept in the Marine Hospital at Mobile about 11 months under treatment and is not yet entirely recovered.

Conceding, however, that the master was justified in bringing him on to Mobile, after soliciting and getting his consent to do so, there can be no excuse in the great and absolutely unwarranted delay after the vessel reached Mobile. The man had asked to be put in the hospital as soon as the vessel got there. The relation of master and seamen puts an absolute duty on the master to look after the health and comfort of an injured seaman.

It is urged that the master did not know his wrist was broken, and did not know how sick he was, and how he was suffering, and that the libelant made no complaint as to his treatment. The master knew of the fall and injury, and that the libelant was confined to his bed from the time of his fall. If he failed or refused to make inquiries as to libelant's condition, it was all the more his fault. He could and should have known, by proper inquiry of the officers and crew, how sick libelant was, and that his condition required surgical treatment. The Iroquois, 194 U. S. 246, 24 Sup. Ct. 640, 48 L. Ed. 955. That his wrist had to be rebroken and reset was caused by this delay.

I find, however, that the master did know enough to require the putting of libelant into a hospital, and his negligence in this respect after the arrival of the boat in Mobile was gross. According to the first mate, the vessel arrived in Mobile late in the afternoon of February 1, 1922, and tied up to a wharf near the dry dock for a few hours, then shifted down alongside the dry dock, where she stayed overnight, and was docked next morning.

There was no reason an ambulance could not have been had, and the man put in the hospital on February 1st, so that he would have been treated on the 2d. This indifference on the part of the master to the condition of this injured and helpless seaman is inexcusable, and cannot be too sharply condemned. The lower the grade of the seaman, and the more helpless he is, the greater the duty of the master, because the man cannot look after himself, and has no one else to see that he gets attention.

By reason of the fault of the master, this helpless Filipino was left suffering from the time he passed by Key West, January 29th to February 6th, just because the master was indifferent to his suffering. How can I tell to what extent this delay contributed to the length of the hospital treatment. I know it caused from 5 to 8 additional days of suffering to this man, and necessitated rebreaking his arm.

What should be given him for this suffering? I know of no measure by which I can accurately determine it. Who would be willing to undergo it for any fixed compensation?

A decree will be entered, fixing his damages at $1,500.