## MALONEY v. UNITED STATES.

District Court, S. D. New York.
Nov. 21, 1927.

Silas B. Axtell, of New York City, for libelant.

Charles H. Tuttle, U. S. Atty., of New York City (by F. H. Cunningham, of New York City), for the United States.

GODDARD, District Judge.

This is a suit under Suits in Admiralty Act of March 9, 1920 (41 Stat. 525 [46 US CA § 741 et seq.]), by Sara E. Maloney, as administratrix of the estate of the late Henry Maloney, to recover damages as a result of his death which occurred while he was a member of the crew of the steamship America owned and operated by the United States.

The America, which is one of the large transatlantic liners of 24,000 tons' displacement, was at the time on one of her regular voyages from New York to Bremerhaven, Germany. The deceased, who was an experienced seaman and had been second boatswain for upwards of ten voyages on the America, was on the morning of December 12, 1922, at about 8:20 o'clock in the morning with several other members of the crew acting under orders from the chief boatswain, engaged in stretching "save-alls" across the Nos. 6, 7, and 8 hatches located on the after deck, starboard side. One "save-all" had been put up and the deceased was on his way to the No. 9 hold, starboard side, aft, where the "save-alls" were stored, to get a second "save-all," when he was struck by a heavy wave which came aboard from the starboard quarter, throwing him down the stairway leading to the No. 9 hold, causing injuries which resulted in his death a few hours later.

A "save-all" is a heavy net which is placed on the weather side of a ship, and a wave in striking against it, breaks, disintegrates, and loses much of its force. It appears that they are frequently used on passenger ships to protect the passengers against heavy seas, and the testimony is that there was a standing order on the America for "save-alls" to be put out both on east and west bound voyages during the winter season, as a protection for passengers in the event of heavy weather. The "save-alls" used by the America were made of rope with a 2-inch mesh and were 12x24 feet. The deck where Maloney and the others were putting up the "save-alls" was known as the "Third Class Promenade Deck" and was about 30 to 35 feet above the sea level.

The entries in the America's logbook relating to the weather are "4 to 8 a. m. * * * overcast, raining, fresh southwest breeze to moderate gales, rough seas, shipping sprays on starboard side." "8 a. m. to meridian. 8:20 H. Maloney, #15, second boatswain, and R. Peterson, 79, ordinary seaman, were washed down in No. 9 hold and injured by heavy sea breaking on quarter deck; were taken to hospital 8:30. Tested whistle; 11, Commissioner of Staff inspected ship. Partly cloudy. Heaviest Horizon; rough quarter sea."

The action is based upon the alleged negligence of the respondent in failing to provide the deceased with a safe place to work, to slow down the ship or bring her up into the wind, to warn the deceased of the danger, to furnish and keep in good order the ship's equipment, and in the failure to provide proper life lines.

The occurrence was not due to defective equipment, but was the result of his being struck by a heavy sea, which came aboard. The deceased was not washed overboard; and having in mind the manner in which the deceased received his injuries, it does not appear that life lines would have saved him. The facts are quite different from those in Zinnel. v. U. S. Shipping Board Emergency Fleet Corp. (C. C. A.) 10 F.(2d) 47.

Counsel for libelant also urges that the ship should have been slowed down, but obviously with a following sea, or with one nearly so, this would not have been good seamanship and would have increased the possibility of waves breaking over her in the after part.

In view of all the circumstances, the size of the ship, that the deck where Maloney was working was 30 to 35 feet above the sea level, that it was not unusually heavy weather, and the uncontradicted testimony that, while spray had come aboard during that morning, this was the first wave to come aboard, it cannot fairly be said that Maloney was ordered to work in an unsafe place, or that there was negligence in failing to bring the ship up into the wind while the "save-alls" were being put up. Looking back, it does not appear that any one did anticipate that such a wave would come aboard during that time, or that it should have reasonably been

anticipated. It was a most unfortunate occurrence, but the result does not warrant holding that those in command were lacking in their exercise of care and judgment for the protection of the crew. To have brought the ship up into the wind would not have been without some possible hazard.

█ The master was a mariner of long experience, and in the absence of a situation clearly indicating to the contrary, what he deemed good seamanship and reasonably safe operation for his crew is not without weight.

█ The conclusion from all the evidence is that Maloney's death was due to the natural perils of navigation, a risk which a seafaring man himself assumes. The Robert C. McQuillen (D. C.) 91 F. 685; 35 Cyc. p. 1244 and cases cited, and the libel must therefore be dismissed.