## STRATTON v. UNITED STATES et al.

District Court, S. D. New York.
Aug. 1, 1934.

Lucien v. Axtell, of New York City, for libelant.

Martin Conboy, U. S. Atty., of New York City (Harry J. Hanna, Sp. Asst., of New York City, of counsel), for respondents.

GODDARD, District Judge.

The amended libel alleges two causes of action; one for $25,000 damages as a result of personal injuries sustained by the libelant, and the other for maintenance and cure in the amount of $5,000.

On June 29, 1925, around 4 o'clock in the afternoon, the S. S. Cody, operated by the United States Shipping Board Merchant Fleet Corporation, was moored alongside of a pier at Houston, Tex. The libelant, Mr. Stratton, her chief engineer, entered the dining salon for the purpose of inspecting some leaking faucets, and noticed that an electric fan was running, and, as no one was in the room, and there being no need for it, he

reached for the switch to turn it off, when he was suddenly and without warning shot by a bullet which came through the partition separating the dining salon from the chief officer's quarters. The bullet which struck Mr. Stratton came from a pistol owned by Mr. Joppeck, the chief officer of the vessel, who was cleaning his revolver while seated at a desk in his quarters and who pulled the trigger of his revolver in the course of cleaning and oiling it without being aware that it was loaded. The chief officer testified that, when he joined the Cody, he brought with him as part of his ship's equipment his sextant, dividers, charts, Bowditch nautical tables, and the pistol; that he had taken these with him as part of his equipment for use in his duties as chief officer on every voyage he had made, with the exception of the previous one, and that "on any ship I have ever been on you will find all the chief officers have a pistol," as it was part of his duty, in the absence of the captain, to maintain discipline among the crew or to meet any emergency, but on the previous voyage he had left his pistol with his wife for her protection who was living alone in the country; that he himself had removed the cartridges from the pistol when he left it with his wife, but that between that time and the time when he took it back with him to the Cody she had placed a cartridge in it without his knowing it, and that he had not examined it to see if it was loaded before pulling the trigger while cleaning it, as he assumed it was still empty, but unbeknowns to him she had placed a cartridge in it.

The captain of the Cody testified that he did not know that the chief officer had a pistol, and that no members of the crew had been furnished with firearms, and, upon being asked, "Had you given permission to chief officer Joppeck, or to any members of the crew of your vessel at that time or any previous time to have fire arms in their possession?" answered, "No sir. Well, I might add to that by saying that it is customary for some officers, if they wish, to carry a revolver, licensed officers, deck officers, and some do and some do not," and stated that he himself carried a Lueger automatic pistol, and, when asked the question, "You made no effort to ascertain whether or not he (Joppeck) had a gun?" replied, "No sir, because officers are supposed to have them if they want them, in fact, some of the companies insist that they do, and supply the arms."

The bullet entered Stratton's back near the left shoulder and lodged near the junction of the left arm and shoulder. After the shooting, Stratton was removed to St. Joseph's Infirmary at Houston, Tex., where the bullet was removed, the wound dressed, and he rejoined the Cody on July 3d and completed the voyage to Germany as chief engineer, although part of the time he did only light work, his left arm being in a sling for about a month. By October the wound was healed, and upon his return to America he signed up as chief engineer for another voyage, resigning on April 14, 1926, having originally joined the Cody in September, 1924. Mr. Stratton is married, and in 1925 was forty years old.

In August, 1919, Mr. Stratton was advised that he had tuberculosis. Formerly he had been a member of the United States Navy Reserve, and was then placed on the inactive list because of his condition. In September, 1919, he had a hemorrhage of the lungs, and from 1919 to 1923 he suffered from chronic attacks of tuberculosis and hemorrhages, although for some months during that period he acted as chief engineer on the S. S. Westwood. In 1923 he went to Texas, and was employed by an insurance company in the mornings and rested in the afternoons. For a period of eighteen months prior to the shooting he had been feeling better and was running no temperature. During the latter part of the nine months following the shooting, and while he was chief engineer on the Cody, he began to run a temperature, and when he resigned in April he was losing weight and the tubercular condition had again become active. After leaving the Cody, he did light work at intervals, resting in the meanwhile, later going to the Veterans' Hospital at Battle Creek, Mich., for treatment, and subsequently on May 18, 1932, was transferred to the Fitzsimmons General Hospital in Colorado, where he now is in a serious condition from tuberculosis.

On June 29, 1925, when Mr. Stratton entered St. Joseph's Infirmary for treatment of his pistol wound, he was examined by Dr. Simm H. Moore, surgeon of the Public Health Service of the Treasury Department, who reported that he found "evidence of moderately advanced pulmonary tuberculosis."

As a result of the shooting, Mr. Stratton has suffered a permanent limitation of the left arm, so that he cannot raise it above his head. For a long time after he was wounded he suffered pain, and ever since, when he tries to raise the arm, he has pain.

██ The suit is brought pursuant to the Jones Act, § 33, 41 Stat. 988, 1007 (46 USCA

§ 688), which provides that a seaman may recover damages caused by the negligence of a ship's officer or fellow employee. Panama Railroad Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Baltimore Steamship Company v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069; Alpha Steamship Corporation v. Cain, 281 U. S. 642, 50 S. Ct. 443, 74 L. Ed. 1086; New Jersey Steam-Boat Co. v. Brockett, 121 U. S. 637, 7 S. Ct. 1039, 30 L. Ed. 1049.

If the possession of the pistol by the first officer was within the general scope of his official duties, it follows without doubt, I think, that the respondent is liable if the chief officer was careless in cleaning and oiling it and as a result one of the crew was injured. To have pulled the trigger without looking to see if it was loaded was, under the circumstances, a negligent act. It was another instance of carelessness with the frail excuse of "I didn't know it was loaded." It makes little or no difference who owns or actually furnished the sextant, pistol, etc., if they were for use in the service of the vessel and within the line of duty. The weight of the evidence is that frequently the vessel owner supplied firearms for its deck officers for use in the event of an emergency or in maintaining discipline, and that on other vessels it was quite customary to leave to the discretion of such officers whether or not they were to include, with their sextant, charts, and other equipment for use aboard the vessel, a pistol. The captain of the Cody knew that, when the owner of the vessel did not provide firearms for its deck officers, it was quite usual for such officers to bring their own pistols, and he at least made no effort to find out and prevent it on this occasion, and the fair inference is that it was left to the discretion of the chief officer. I find from the weight of the evidence in the case that in possessing and cleaning the pistol in question the chief officer was acting within the scope of his duties, and that the respondent is liable for his negligence while so engaged.

I do not think that it has been proven that the pistol shot is the natural and proximate cause of the libelant's present tubercular condition, or that it has been proven that the disease of tuberculosis from which the libelant has been suffering for a number of years was aggravated or its activity increased as a result of the pistol shot wound. The fair conclusion from the testimony of the physicians and of the circumstances is that it may have adversely affected his condition. It follows from what has been stated above that the libelant's recovery must be confined to the injury to his shoulder which has left him with a permanent limitation of the motion of the left arm which prevents him from raising it above his head. He received his full pay of $280 a month and found for the nine months on the Cody following the shooting, and there is no proof of loss of other pay as a result of the shooting. He has been furnished free hospitalization by the Veterans' Bureau or others, and the only expenses for medical treatment proved are $35.

In my opinion, a fair award for the impaired arm and the pain and suffering is $1,750, and libelant may have a decree for $1,750 in addition to the $35—a total of $1,785. There is no proof to sustain an award for maintenance and cure except the $35 for medical attention which has been included in the award under the first cause of action; therefore the second cause of action for maintenance and cure is dismissed.