**GIBBS v. UNITED STATES,**
and six other cases.
**Nos. 25255, 25263–25265, 25287,**
**25303, 25344.**

United States District Court
N. D. California, S. D.
Nov. 29, 1950.

Melvin M. Belli and Lou Ashe, San Francisco, Cal., for libelant James C. Gibbs.

Albert H. Gommo, Jr., San Francisco, Cal., for libelants Henry Williams, Michael A. Di Matteo, David Bower, and Forrest J. Kincade.

Eric A. Falconer, San Francisco, Cal., Frank S. Barrett, San Jose, Cal., and Albert H. Gommo, Jr., San Francisco, Cal., for libelant Forrest J. Kincade.

Charles A. Christin, Wm. T. Eckhoff, San Francisco, Cal., for libelant William Comber.

Gladstein, Anderson, Resner & Sawyer, Herbert Resner, Henry Gross, and Francis P. Walsh, all of San Francisco, Cal., for libelant Robert Lee Dentley.

Frank J. Hennessy, U. S. Atty., C. Elmer Collett and Antoinette E. Morgan, Asst. U. S. Attys., all of San Francisco, Cal., for United States of America.

GOODMAN, District Judge.

These seven consolidated cases are actions in tort against the United States. All of the libelants were shoreside civilian employees of the United States. On November 19, 1946, they were engaged in repairing the United States Aircraft Carrier Antietam, at San Francisco Naval Shipyard, Hunters Point. An explosion occurred and the libelants all suffered injuries.

Heretofore Judge Harris of this court decided that the actions could proceed under the Public Vessels Act, 43 Stat. 1112, 46 U.S.C.A. 781 et seq. When the cases were called for trial, the Court, with the consent of all parties, proceeded to conduct a preliminary trial to determine whether or not the libelants had received and accepted compensation pursuant to the Federal Employees Compensation Act, hereinafter referred to as FECA, 39 Stat. 742, 5 U.S.C.A. § 751 et seq. Witnesses testified in each of the cases as to applications for and receipt and acceptance of compensation by the libelants.

The evidence showed that six of the libelants received compensation for varying periods. One libelant, James C. Gibbs, received medical treatment and hospitalization, but no compensation.

Upon conclusion of the preliminary trial there were submitted to the court for decision the following issues:

1. Was the FECA the exclusive remedy of the libelants?

2. If it was not, was the receipt and acceptance of compensation an election of remedies on the part of libelants thus estopping them from maintaining tort actions against the United States?

### Exclusiveness of Remedy.

A study of the statutory system for compensating injured federal employees, as well as of the various statutes whereby the United States has consented to be sued for tort liability, and applicable decisions, is persuasive that, until the FECA was amended in 1949, it did not provide an exclusive remedy and did not prevent suits by employees of the United States under the Public Vessels Act.

Since the first federal employees compensation statute was adopted in 1908 up to the amendment of October 14, 1949, there has never been a provision in any of the compensation statutes or their amendments, either in form or effect, making the benefits thereof the exclusive remedy of federal employees. Footnoted is a chronological list of the statutes and their scope.[1]

It is equally true that in none of the statutes by which the United States has waived its sovereign immunity and consented to be

---

1. Act of May 30, 1908, 35 Stat. 556, covered workmen in manufacturing establishments, arsenals, or navy-yards, or engaged in the construction of rivers and harbor fortifications or in hazardous work under the Isthmian Canal Commission or on reclamation projects;

 Act of March 11, 1912, 37 Stat. 74, extended the 1908 Act to employees engaged in hazardous work under the Bureau of Mines or the Forestry Service;

 The Panama Canal Act of August 24, 1912, 37 Stat. 560, 48 U.S.C.A. § 1301 et seq., authorized the President to provide compensation for all employees injured while working in connection with the Panama Canal or the Panama Railroad;

 The Federal Employees Compensation Act of September 7, 1916, 39 Stat. 742, 5 U.S.C.A. § 751 et seq., the present Act covering the employees of the United States, defined in Section 40, 5 U.S.C.A. § 790 as "all civil employees of the United States and of the Panama Railroad Company".

 Act of July 15, 1939, 53 Stat. 1042, 5 U.S.C.A. § 797, extended the present Act to members of the Officers' and Enlisted Reserve Corps of the Army injured in line of duty in peacetime, and provided they should elect whether to receive benefits under the Act or pensions based upon military service.

sued, is there any provision making the benefits provided in the compensation statutes the exclusive remedy of federal employees. Footnoted is a chronological list of such statutes and their scope.[2]

From a review of court decisions, it can be categorically stated that no federal court decision, other than the case of Posey v. Tenn. Valley Authority, 5 Cir., 1937, 93 F. 2d 726,[3] has ever held that the FECA affords the exclusive remedy to federal employees. To the contrary, it has been specifically held that the FECA does not bar suits by federal civilian employees against the Panama Railroad,[4] or against the United States under the Federal Control Act of 1918,[5] under the Suits in Admiralty Act,[6] under the Public Vessels Act[7] and

2. The Shipping Act of September 7, 1916, 39 Stat. 728, 46 U.S.C.A. §§ 801–842, passed the same day as the Federal Employees Compensation Act, created the United States Shipping Board and subjected every vessel purchased, chartered, or leased from the Board, while employed as a merchant vessel, to all liabilities governing merchant vessels;

The Federal Control Act of March 21, 1918, 40 Stat. 451, permitted the United States, through its Director General of Railroads, to be sued for any injury negligently caused on any line of railway in his custody, precisely as a common carrier corporation operating such line might have been sued;

The Suits in Admiralty Act of March 9, 1920, 41 Stat. 525, 46 U.S.C.A. §§ 741–752, subjected the United States and its wholly owned corporations to suits in personam in respect to all vessels owned by the United States or such corporations and employed as merchant vessels, and also authorized suits to proceed in accordance with the principles of libels in rem, but exempted United States' vessels from seizure by judicial process.

The Public Vessels Act of March 3, 1925, 43 Stat. 1112, 46 U.S.C.A. §§ 781–790, permitted libels in personam to be brought against the United States for damages caused by public vessels of the United States.

The Tennessee Valley Authority Act of May 18, 1933, 48 Stat. 58, 16 U.S.C.A. §§ 831–831dd, created the Tennessee Valley Authority, a corporate body, and granted it the power to sue and be sued.

The Federal Tort Claims Act of August 2, 1946, 60 Stat. 842, 28 U.S.C.A. §§ 1346, 2671–2680, subjected the United States to suits for damages caused by the negligence of its employees while acting in the scope of their employment.

Other statutes which merely granted certain federal corporations the power to sue and be sued are not included in this listing inasmuch as no pertinent cases concerning them have been found.

3. That case held that the Congress had provided the Federal Employees Compensation Act as the exclusive remedy against the United States of injured employees of the TVA. The court's decision was based entirely on features of the Tennessee Valley Authority Act, supra note 2, which have no analogy in the other statutes here under consideration.

In O'Neal v. United States, D.C.E.D. N.Y.1925, 11 F.2d 869, the court appears to express the opinion that the Federal Employees Compensation Act is the exclusive remedy of federal employees. However, that case cannot be accepted as a holding to that effect inasmuch as the claimant was a coastguardsman, not entitled to compensation under the Act.

4. Panama R. Co. v. Minnix, 5 Cir., 1922, 282 F. 47; Panama R. Co. v. Strobel, 5 Cir., 1922, 282 F. 52. The Panama Railroad was (until 1948) a New York corporation wholly owned by the United States since 1905. Although a suit against the railroad was not technically one against the United States any recovery from the railroad was indirectly a recovery from the United States.

5. Payne v. Oohlmeyer, 7 Cir., 1921, 275 F. 803; Dahn v. McAdoo, D.C.N.D.Iowa 1919, 256 F. 549, reversed on the ground that plaintiff had elected the remedy provided by the Federal Employees Compensation Act by applying for and accepting compensation payments, Hines v. Dahn, 8 Cir., 1920, 267 F. 105, Circuit Court judgment affirmed sub nom Dahn v. Davis, 1922, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696.

6. Marine v. United States, D.C.Md.1946, 65 F.Supp. 111, affirmed 4 Cir., 1946, 155 F.2d 456.

7. Mandel v. United States, D.C.E.D.Pa. 1947, 74 F.Supp. 754; Smith v. United States, D.C.N.D.Cal., No. 25180, August 13, 1949;* Henz v. United States, D.C.N.D.Cal., No. 25315, January 17, 1950;* Sims v. United States, D.C.N. D.Cal., No. 25434, December 28, 1949.*

In at least two cases, seamen injured while employed aboard United States' vessels were permitted to sue under the Public Vessels Act without discussion of

under the Federal Tort Claims Act.[8]

Indeed numerous suits by seamen injured on government merchant vessels have been allowed to proceed against the United States and the United States Shipping Board Fleet Corporation without any discussion of the effect of the FECA.[9] The Supreme Court itself appears to have taken it for granted that the FECA is not an exclusive remedy. This it has done in several cases, even though what it has said may be characterized as dicta. Yet its reiteration, if it be dicta, is, to say the least, cumulatively persuasive.[10]

It is true that there are three cases in the Second Circuit denying *naval personnel* the right to sue under the Public Vessels Act.[11] But those cases are, at best, merely analogous in that the remedy they hold to be the exclusive remedy available to naval personnel is that provided by the veterans' pension laws and not that accorded by the FECA.[12] Moreover, the validity of those decisions is now extremely doubtful in view of the Supreme Court's holding in Brooks v. United States, 1949, 337 U.S. 49, 69 S.Ct. 918, 920, 93 L.Ed. 1200, that there is nothing in "the veterans' laws which pro-

the effect of the FECA. United States v. Loyola, 9 Cir., 1947, D.C., 161 F.2d 126; Krey v. United States, 2 Cir., 1941, 123 F.2d 1008.

8. White v. United States, D.C.N.J.1948, 77 F.Supp. 316. In Elgin v. United States, D.C.W.D.Mo.1950, 89 F.Supp. 195 the court rendered a judgment in favor of a federal employee against the United States under the Tort Claims Act, without discussion of the FECA.

9. See, e.g. Axtell v. United States, D.C. E.D.N.Y.1922, 286 F. 165; Unica v. United States, D.C.S.D.Ala.1923, 287 F. 177; Morris v. United States, 2 Cir., 1924, 3 F.2d 588; United States Shipping Board Emergency Fleet Corporation v. O'Shea, 1925, 55 App.D.C. 300, 5 F.2d 123; Zinnel v. United States S. B. E. F. C., 2 Cir., 1925, 10 F.2d 47; Hansen v. United States, D.C.S.D.Ga. 1926, 12 F.2d 321; Maloney v. United States, D.C.S.D.N.Y.1927, 7 F.Supp. 14; U. S. S. B. E. F. C. v. Greenwald, 2 Cir., 1927, 16 F.2d 948; Stewart v. United States, D.C.E.D.La.1928, 25 F.2d 869; Howarth v. U. S. S. B. E. F. C., 2 Cir., 1928, 24 F.2d 374; Ives v. United States, 2 Cir., 1932, 58 F.2d 201; Stratton v. United States, D.C.S.D.N.Y.1934, 8 F. Supp. 429; Helmke v. United States, D. C.E.D.La.1934, 8 F.Supp. 521; Carlson v. United States, 5 Cir., 1934, 71 F.2d 116, 117; Johnson v. United States, 2 Cir., 1935, 74 F.2d 703; Smith v. United States, 5 Cir., 1936, 96 F.2d 976; Desrochers v. United States, 2 Cir., 1939, 105 F.2d 919.

Employees of the Fleet Corporation were employees of the United States entitled to the benefits of the Federal Employees Compensation Act. Seamen aboard Fleet Corporation vessels were considered to be employees of the United

States, even though the vessel was operated by a private agent, if the agency contract was the so-called MO 4 form of agreement. See 34 Op.Atty.Gen. 120 (1924) and 363 (1925). The cases cited above do not always make clear by whom or under what type of agreement the vessel involved was operated. But, the claimants in all of the cases appear to have been treated as employees of the United States; certainly this is true of those cases where the claimant established rights against the United States under the Jones Act, 41 Stat. 1007, 46 U.S.C.A. § 688.

10. See Dahn v. Davis, 1922, 258 U.S. 421, 428, 42 S.Ct. 320, 66 L.Ed. 696; Brady v. Roosevelt S. S. Co., 1943, 317 U.S. 575, 577, 63 S.Ct. 425, 87 L.Ed. 471; Brooks v. United States, 1949, 337 U.S. 49, 53, 69 S.Ct. 918, 93 L.Ed. 1200.

11. O'Neal v. United States, D.C.E.D.N.Y. 1925, 11 F.2d 869, affirmed 2 Cir., 1926, 11 F.2d 871; Haselden v. United States, D.C.E.D.N.Y.1927, 24 F.2d 529, affirmed sub nom. Dobson v. United States, 2 Cir., 1928, 27 F.2d 807; Bradey v. United States, 2 Cir., 1945, 151 F.2d 742, certiorari denied 1946, 326 U.S. 795, 66 S. Ct. 484, 90 L.Ed. 483.

12. For an explanation of the apparent inconsistency between this statement and the discussion of the Federal Employees Compensation Act in O'Neal v. United States, see note 3, supra.

Compare Wootton v. United States (The Culberson), 3 Cir., 1932, 61 F.2d 194, 195 where the mother of a coastguardsman was permitted to sue the United States under the Suits in Admiralty Act, without discussion of the effect of any possible compensation under the veterans' pension laws.

vides for exclusiveness of remedy" so as to bar a suit by a serviceman under the Federal Tort Claims Act.[13] The support which the Second Circuit purported to find for these decisions in the Clarification Act of 1943, 57 Stat. 45, 50 U.S.C.A.Appendix, §§ 1291–1295, is somewhat illusory. The Court stated that the provision of that Act excluding seamen employed through the War Shipping Administration from the benefits of the FECA showed that the Congress did not expect those in its service upon public vessels to enjoy at once the privilege of compensation and the right to sue for damages. Even were the congressional policy expressed in the Clarification Act accepted as a proper guide to the legislative intent of a previous Congress, the policy behind the special treatment of War Shipping Administration seamen was not that deduced by the Circuit Court. The Committee Reports on the Act [14] clearly demonstrate that the Congress was motivated by the desire to equate the rights of War Shipping Administration seamen and seamen privately employed, rather than by any feeling that all employees on public vessels should be limited to a single remedy.

It has been argued by the Government that Section 9 of the Public Vessels Act, 46 U.S.C.A. § 789,[15] limits libelants to their remedy under the FECA, because a private employer would not be liable to suit inasmuch as the Longshoremen and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., is made the exclusive remedy of employees against private employers. I see no reason for prolonging this opinion by a discussion of this argument. In my opinion the argument is not meritorious.

On October 14, 1949, the Congress added subsection (b) to Section 7 of the FECA, 5 U.S.C.A. § 757(b), and there provided specifically and clearly that the Act was the exclusive remedy of all employees of the United States except the masters or members of the crew of vessels. Public Law 357 81st Cong., 1st Sess. The issue of exclusiveness of remedy therefore is no longer precedentially significant. The 1949 amendments may be said to have some argumentative weight as indicative of Congressional awareness that up to *that* time the compensation statute was not the exclusive remedy of employees; or, to say the least, that there was grave doubt in the matter.

■ It is my conclusion that the compensation statute was not the exclusive remedy of the libelants in these cases.

### Election of Remedies.

There has been almost uniform approval, in the authorities, of the rule that acceptance of compensation under the compensation statute, in the absence of coercion or other improper influence, is a bar to tort suits against the United States for dam-

13. Since the present opinion was filed, the law in respect to suits against the United States by military personnel has been clarified by the decision of the Supreme Court in Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153. In the Brooks case, the Court had held merely that the fact that servicemen were entitled to compensation under the veterans' pension laws did not prevent a suit against the Government by a soldier injured while on furlough. In the Feres case, the Court concluded that military personnel could not sue the Government for injuries incident to their service. The basis for the Feres decision was not that the availability of compensation in itself precluded an additional remedy, but rather that the entire relationship between the Government and the members of the armed forces is incompatible with suits for injuries incident to military service. Thus, the decisions of the Second Circuit barring suits by naval personnel under the Public Vessels Act appear to be correct, at least in result. But, the reasoning in the Feres decision, of course, is not applicable to suits by civilian employees.

14. House Report 2572, Senate Reports 1655, 1813, 77th Congress, Second Session; House Report 107, Senate Report 62, 78th Congress, First Session.

15. "The United States shall be entitled to the benefits of all exemptions and of all limitations of liability accorded by law to the owners, charterers, operators or agents of vessels."

ages. The cases so holding are footnoted.[16]

The evidence in all of the consolidated cases, except that of Gibbs, is clear and convincing that the libelants applied for and periodically received compensation under the statute. The evidence shows that some, if not all of the six libelants, other than Gibbs, suffered serious burns and injuries in the Antietam explosion. These men were immediately hospitalized and received medical attention. The employees of the Compensation Commission prepared all the necessary papers for the injured men and cooperated in every way to secure the prompt payment to them of their compensation payments. The evidence shows, and it is my conclusion, that all six men were fully aware that they were receiving compensation under the compensation statute. It was suggested and argued by counsel for libelants that some duty rested upon the employees of the Compensation Commission to advise libelants that they might have a right of action against the United States in tort for damages. There is no basis in law or in fair dealing for such a duty. To the contrary, it was the conscientious duty of the employees of the United States, administering the compensation statute, in the circumstances of this case to see to it that the injured men were assisted in every way to promptly and regularly receive the compensation to which

they were entitled. It is my opinion and finding that the libelants uncoercedly received and accepted compensation under the compensation statute. There is not the slightest evidence to sustain the claim that the acceptance of compensation was either not free or was coerced.

■ It is contended by libelants the making of claims for and acceptance of compensation under the statute is not sufficient to constitute an election without a final award by the Commission. This argument is invalid. See Frader v. U. S., supra, footnote 16.

The cases of all the libelants except Gibbs will therefore be dismissed upon the ground that the libelants are barred from maintaining the actions because they have elected their remedy under the FECA. Findings should be submitted accordingly.

The case of Gibbs v. United States poses a somewhat different problem. Gibbs received certain benefits under the FECA, namely, medical and hospital attention. He did not apply for nor did he receive any compensation payments. The court will reserve ruling on the question as to whether or not there has been an election of remedies in his case. His case will be set for further trial on December 19, 1950, for the purpose of hearing further evidence on the issue of election of remedies and also on the merits as to the liability of the United States.

16. Dahn v. Davis, 1922, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696, affirming Hines v. Dahn, 8 Cir., 1920, 207 F. 105; Hillenbrand v. United States, D.C.S.D.N.Y., 1929 A.M.C. 885; Militano v. United States, D.C.S.D.N.Y.1943, 55 F.Supp. 904, affirmed 2 Cir., 1946, 156 F.2d 599, certiorari dismissed, 329 U.S. 682, 67 S.Ct. 193, 91 L.Ed. 600; Parr v. United States, D.C.Kan.1948, 78 F.Supp. 693, affirmed 10 Cir., 1949, 172 F.2d 462; Johnson v. United States, D.C.E.D.Va.

1949, 89 F.Supp. 65; Frader v. United States, D.C.S.D.N.Y.1950, 91 F.Supp. 657, 1950 A.M.C. 784; Banks v. United States, D.C.N.D.Calif., 1950 A.M.C. 1400.

See also the dicta in Brady v. Roosevelt S. S. Co., 1943, 317 U.S. 575, 581, 63 S.Ct. 425, 87 L.Ed. 471, and Brooks v. United States, 1949, 337 U.S. 49, 53, 69 S.Ct. 918, 93 L.Ed. 1200. Compare White v. United States, D.C.N.J.1948, 77 F.Supp. 316.