## ALLEN v. UNITED STATES.

### No. 13034.

United States Court of Appeals
Ninth Circuit.

Dec. 31, 1952.

Fall & Hayton, David A. Fall, San Pedro, Cal., for appellant.

James R. Browning, Acting Asst. Atty. Gen., Walter L. Binns, U. S. Atty., Los Angeles, Cal., Leavenworth Colby and Keith Ferguson, Sp. Assts. to Atty. Gen., Bernard B. Laven, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a decree in admiralty dismissing a libel in which Allen sought (a) to recover damages for tuberculosis caused by the unseaworthy conditions on vessels in which the United States required him to serve in the Pacific in the Second World War and (b) under a provision of his contract for wages during his incapacity from his tuberculosis.

A. So far as concerns Allen's claim that he is entitled to recover for his injuries arising from employing him on vessels under unseaworthy conditions, causing his tuberculosis, it appears that he himself states that on August 14, 1947, he was entered at the Aiea Naval Hospital for treatment of bilateral pulmonary tuberculosis. [Respondent's Exhibit A, page 26A, Appellee's brief.] His amended libel, stating for the first time this cause of action, was not filed until October 14, 1949, more than the two years after Allen's cause of action arose. Hence the action is barred by the Suits in Admiralty Act, 46 U.S.C.A. § 745 and the Public Vessels Act, 46 U.S. C.A. § 781. This assumes that the cause

264

of action did not arise until Allen knew of his tubercular condition, a condition he claims is supported by Urie v. Thompson, 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282. If, as claimed by the United States, the statute begins to run on the day after the last day of the voyage on which Allen was exposed to the unseaworthy conditions, the statute began to run on July 8, 1947.

▪ B. As to Allen's claim for wages during disability, it is based on provisions of his first contract of employment of May 21, 1944, which Allen claims were embodied in a second contract of employment of date March 14, 1945. We do not have to pass on the question whether the second contract contained the provisions of the first, for if it does they constitute no claim for payment of wages during disability.

The first contract had two clauses, 7 and 8, one for straight wages during disability and the other for compensation under the Federal Employees Compensation Act, 5 U.S.C.A. § 751 et seq. Clause 7 provides that "In the event of illness or injury occasioned by his employment but not due to the Employee's misconduct, the base wages of the Employee will continue during the period of such incapacity."

This was followed by Clause 8 reading: "The Employee shall be subject to the benefits as he may be entitled to under the United States Employees' Compensation Act of September 7, 1916, as amended, for injury sustained while on the performance of his duty." That Act provides:

"[Sec. 1.] That the United States shall pay compensation as hereinafter specified for the disability or death of an employee resulting from a personal injury sustained while in the performance of his duty * * *.

"Sec. 7. That as long as the employee is in receipt of compensation under this Act, or, if he has been paid a lump sum in commutation of installment payments, until the expiration of the period during which such installment payments would have continued, he shall not receive from the United States any salary, pay, or remuneration whatsoever *except in return for services actually performed,* and except pensions for service in the Army or Navy of the United States." (Emphasis supplied.)

These provisions of the act are as much a part of Allen's contract with the government as if they were written in it. By choosing to accept the award of disability payments under Section 7 of the Employees' Compensation Act, Allen deprived himself of any wage payments during his disability —that is during a period when there were no "services actually performed" by him. Frader v. United States, D.C.S.D.N.Y., 91 F.Supp. 657; Gibbs v. United States, D.C. Cal., 94 F.Supp. 586; Johnson v. United States, D.C.Va., 89 F.Supp. 65.

Further assuming that clauses 7 and 8 are in the second employment contract of March 14, 1945, that contract was preceded by the Act of July 1, 1944, c. 373, 58 Stat. 712, amending Section 7 of the original Compensation Act so as to require election between compensation benefits and any payments or benefits otherwise available.[1]

▪ The provisions of this Act also are as much a part of the March 14, 1945 con-

1. That Act provided:
"Sec. 605. (a) Section 7 of the Act of September 7, 1916, entitled 'An Act to provide compensation for employees of the United States suffering injuries while in the performance of their duties, and for other purposes', as amended (U.S.C., 1940 edition, title 5, sec. 757), is amended by changing the period at the end thereof to a colon and adding the following: '*Provided,* That whenever any person is entitled to receive any benefits under this Act [F.E.C.A.] by reason of his injury, or by reason of the death of an employee, as defined in section 40, and is also entitled to receive from the United States any payments or benefits (other than the proceeds of any insurance policy), by reason of such injury or death under any other Act of Congress, because of service by him (or in the case of death, by the deceased) as an employee, as so defined, such person shall elect which benefits he shall receive. Such election shall be made within one year after the injury or death, or such further time as the Commission may for good cause allow, and when made shall be irrevocable unless otherwise provided by law.'"

tract as if repeated therein. Pursuant to its requirement, Allen gave a written election to accept in lieu of his claim under paragraph 7 of his contract, which he was then prosecuting in this suit below, a compensation award made May 26, 1950, at the rate of $89.71 per week and was paid $6,486.87 of accrued compensation. He has since continued to accept under the award $391.12 each four weeks. We regard as frivolous Allen's contention that he was coerced by the need for the money to make this election and that therefore he can keep the award and also be paid his base wages during his illness.

The decree is affirmed.