## DAHN *v.* DAVIS, AGENT, ETC.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 166. Argued March 10, 13, 1922.—Decided April 10, 1922.

A postal employee of the United States, injured while in the performance of his duty on a railroad operated at the time by the Director General of Railroads under the Federal Control Act, c. 25, 40 Stat. 451, and who elected to accept, and received, compensation therefor under the Federal Employees' Compensation Act, c. 458, 39 Stat. 742, was thereby debarred from an action against the Director General for negligence causing the injury. P. 428.

267 Fed. 105, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals reversing a judgment of the District Court for the present petitioner in his action for damages against John Barton Payne, as Director General of Railroads. James C. Davis, successor of Mr. Payne as Director General, was substituted as respondent by order of this court, he having been designated by the President as agent for the defense of such actions under § 206 of the Transportation Act, 1920, c. 91, 41 Stat. 456, 461.

*Mr. Walter C. Clephane,* with whom *Mr. J. Wilmer Latimer* was on the brief, for petitioner.

The receipt of benefit under the Compensation Act does not constitute an election barring the plaintiff of

his remedy. If this were a suit against the United States in the ordinary sense, so that a judgment would have to be paid out of its public moneys derived through its taxing power and other ordinary sources of revenue, then it would follow that the judgment in this case would be paid out of the public moneys generally, the same source from which beneficiaries under the Compensation Act derive their compensation. This, however, is not the case. The railways while under federal control were never considered to be an integral part of the governmental system. In consenting that the Director General might be sued, Congress provided in the Control Act an elaborate scheme whereby judgments should be paid out of the railway operating income under the rules of the Interstate Commerce Commission. Federal Control Act, § 12; *Johnson* v. *McAdoo,* 257 Fed. 757.

The compensation to be paid by the United States to a railroad is an amount "not exceeding a sum equivalent as nearly as may be to its average annual operating income for the three years ended June thirtieth, nineteen hundred and seventeen," and it is only such operating income "in excess of such just compensation" as remains the property of the United States. 40 Stat. 452. In determining the "average annual railway operating income" which is to be the basis of payment, judgments against the roads have, under the rules of the Interstate Commerce Commission, been deducted. *Johnson* v. *McAdoo, supra.* The act also puts federal taxes on the same basis, and provides a similar deduction for them. 40 Stat. 452. So far as known, it has never been contended that the federal taxes assessed against the railroads are paid from the Government's own treasury. *Haubert* v. *Baltimore & Ohio R. R. Co.,* 259 Fed. 361.

If executive construction of the Control Act be resorted to, there is ample support for this position. There

is not the same reason for a statutory application of the doctrine of election under these circumstances as exists in the case of the ordinary private employer. Possibly partly for this reason, Congress has not seen fit to require an election to be made.

The Compensation Act was passed before the Control Act, and at a time when a postal clerk unquestionably had a right of action against a railway company by whose negligent act he was injured, but had no redress of any kind against the United States for its negligent act. *Bigby* v. *United States,* 188 U. S. 400.

The mind at once leaps to the question whether it can be possible that Congress intended that, by the mere act of taking the railroads under federal control as an emergency measure, a railway mail clerk should thereby be deprived of his theretofore unquestioned property right to sue and recover for injuries received through negligence such as was charged and proved in this case.

When the Compensation Act was passed the United States could not be sued for torts committed by it. Obviously, therefore, there was no occasion to insert in the act any provision to the effect that the reception of benefits under it was a waiver of any right of action against the United States. The act did, however, carefully preserve the rights of beneficiaries thereunder to present claims and to institute suits against defendants "other than the United States," even to the extent of permitting the commission to require the beneficiary to assign to it any such claim, and conferring authority upon such commission to thereafter prosecute or compromise such claims. (§ 26, 39 Stat. 747.) There is no peculiar significance in the language "other than the United States." This is substantially the phrase which is almost universally used in the compensation acts of the various

States, providing, as they do, for the assignment to the employer of claims by the employee against third parties, so that the employer may be subrogated *pro tanto* to the extent of payments made by him.

Section 7 of the Compensation Act does not prevent a claim being made against the United States, because it only precludes the making of such a claim " so long as the employee is in receipt of compensation under this act," or " until the expiration of the period during which such installment payments would be continued." At the end of these periods he is left free to pursue any remedy he might have, if any such exists.

Furthermore, the meaning of the word " remuneration " as used in the act is clearly limited by the words " salary " and " pay " which are used in conjunction with it in the enumeration. The clear intention here seems to be that while receiving the compensation provided by the act, the employee is to receive nothing in the nature of salary; he is to be cut off the payroll except as to the pay already accrued for services performed. The act is pensional in character and is in the nature of accident insurance furnished by the Government to its employees.

The language of § 41 is significant. The Panama Railroad Company was the only railroad owned and controlled entirely by the Federal Government when the Compensation Act was passed, and the language of § 41 is eloquent proof that Congress recognized the right of action on behalf of a government employee, notwithstanding such absolute government control and ownership. It is clear from this language that Congress had no thought that the right to compensation provided by the act was exclusive of any other remedy against the railroad company, even though the Government did absolutely own and control it.

If the language of § 10 of the Control Act is ambiguous, the history of the legislation can be resorted to. This

shows that an election was never intended. Hearings, 65th Cong., 2d sess., on H. R. 8172.

From the omission in the Control Act of a provision similar to the one relating to the Panama Railroad in the Compensation Act, the conclusion seems unescapable that Congress deliberately chose not to subject plaintiffs to the doctrine of election.

It is clear that at the time the Federal Control Act was passed, the petitioner, a railway mail employee, had the right to sue the Illinois Central Railroad Company for any injury which might have resulted to him from its negligence. Any cause of action in his favor created a legal liability against some party " other than the United States." Section 10 definitely allowed actions to be brought against carriers and " judgments rendered as now provided by law; " and enacted that "in any action at law or suit in equity against the carrier, no defense shall be made thereto on the ground that the carrier is an instrumentality or agency of the Federal Government." This section indicates that the rights theretofore existing in federal employees to sue railroad companies were not affected by the Railroad Control Act. Unless, therefore, there is something in the general purpose of the Employees' Compensation Act, or something which by necessary implication is read into that act, to bar the petitioner's remedy by reason of his acceptance of benefits thereunder, it is submitted that the court below erred in its conclusions.

The Federal Employees' Compensation Act differs in important particulars from the state and English and Scotch acts, cited by the court below.

Must the claimant refund to the Government the amount recovered? The act (§§ 26, 27) provides for two situations: (1) The resort by the beneficiary to the Compensation Act prior to suit, in which case the commission may require him to assign his right of action to

the United States; and (2) the resort to the Compensation Act after recovery by suit, compromise or otherwise. It expressly requires the United States, in the first case to refund to the beneficiary all the recovery except the amount paid him under the Compensation Act, and in the second case, permits the beneficiary to retain all except the amount which has been paid or may be payable to him under the Compensation Act.

With the exception of a very few States, it is believed that the customary legislation permits the claimant to receive and retain the benefit of any excess; and this, petitioner contends, is what the Federal Compensation Act has done. Bulletin, U. S. Bureau of Labor Statistics, Jan. 1921, No. 272, pp. 193 *et seq.; Houlihan* v. *Sulzberger & Sons Co.,* 282 Ill. 76; *Otis Elevator Co.* v. *Miller & Paine,* 240 Fed. 376.

The court below appears to have been impressed with the idea that if recovery were allowed in this case, the employee would recover double compensation. It is believed that the error of this view has been clearly demonstrated, and that this court will be convinced, from the terms of the act itself, that petitioner must reimburse the Compensation Commission from the amount recovered in this suit for the amount paid him by it, and that petitioner would retain only the surplus.

This decision, if unreversed, will have the effect of revolutionizing the practice in two of the Government Bureaus, viz: the Veterans' Bureau and the Federal Employees' Compensation Commission. The beneficiaries of the War Risk Insurance Act, the provisions of which in this respect are almost identical with the Compensation Act, are likewise affected by the decision.

*Mr. A. A. McLaughlin,* with whom *Mr. Solicitor General Beck, Mr. F. H. Helsell* and *Mr. Albert Ward* were on the brief, for respondent.

MR. JUSTICE CLARKE delivered the opinion of the court.

The petitioner, a railway mail clerk in the employ of the United States, was injured on May 29, 1918, when the car in which he was working was wrecked on the line of the Illinois Central Railroad, then being operated by the Director General of Railroads under the Federal Control Act of March 21, 1918, c. 25, 40 Stat. 451. He brought this suit to recover for his injuries against the Illinois Central Railroad Company and the Director General of Railroads, but the former was dismissed from the case on demurrer. Among other defenses, the Director General of Railroads alleged in his answer that the petitioner, as an employee of the United States, had made application for, and pursuant to its provisions had been paid, compensation under the provisions of the Federal Employees' Compensation Act (39 Stat. 742), and that thereby this further action, which is, in effect, against the United States, was barred. A demurrer to this last defense was sustained and the petitioner obtained a verdict on which the District Court entered judgment. On error this judgment was reversed by the Circuit Court of Appeals, that court holding that the petitioner had his option under the law to apply for compensation under the Employees' Compensation Act, as he did, or to sue for damages under the Federal Control Act (c. 25, 40 Stat. 451), and that, by electing to accept the benefits of the former, he was barred from prosecuting this action for negligence against the United States under the latter.

Thus, the writ of certiorari brings up for review the question whether, when a government employee, injured on a railroad, operated at the time by the Director General of Railroads, had elected to accept payment under the Federal Employees' Compensation Act, he was thereby barred from prosecuting a suit against the Director Gen-

eral of Railroads for negligence causing the injury for which he had been compensated.

James C. Davis, the Agent designated by the President under § 206 of the Transportation Act 1920, c. 91, 41 Stat. 456, has been substituted for the Director General of Railroads as respondent.

It was definitely held in *Missouri Pacific R. R. Co. v. Ault,* 256 U. S. 554, that, at all of the times here involved, § 10 of the Federal Control Act permitted the Government, through its Director General of Railroads, to be sued for any injury negligently caused on any line of railway in his custody, precisely as a common carrier corporation operating such road might have been sued, and that recovery, if any, would be from the United States.

Thus, plainly the petitioner had the right to sue the Director General of Railroads for negligently injuring him, and if successful his recovery must have been from the United States.

The Federal Employees' Compensation Act, approved September 7, 1916, c. 458, 39 Stat. 742, provides that the United States shall thereafter pay, as therein specified, for the disability or death of any government employee resulting from personal injury sustained while in the performance of his duty. The act provides for a commission to investigate claims and to make awards, but no compensation may be allowed to any person unless he, or some one in his behalf, shall make written claim therefor. Thus, the petitioner, injured, as he was, while in the performance of his duty, was entitled to compensation under the act upon making claim for it.

This reference to the two acts shows that the petitioner had two remedies, each for the same wrong, and both against the United States, and therefore the question for decision takes the form, May the petitioner, after having pursued one of his remedies to a conclusion and payment,

pursue the other for a second satisfaction of the same wrong against the Government?

That this question must be answered in the negative we think clear from various provisions in the Compensation Act, showing that Congress intended that payments made under it should be regarded as full and final and that no payment in addition thereto would be made by the Government to an injured employee.

Section 7 of the act specifically declares that so long as any employee is receiving installment payments under the act, or if he has been paid a lump sum in commutation of installment payments, then until the expiration of the period during which installment payments would have continued, " he shall not receive from the United States any salary, pay, or remuneration whatsoever except in return for services actually performed," and except pensions for service in the Army or Navy.

It would be difficult to frame a clearer declaration than this that no payment would be made by the Government for injuries received other than as provided for in the act.

Section 26 provides that, " if an injury or death for which compensation is payable under this Act is caused under circumstances creating a legal liability upon some person *other than the United States* to pay damages therefor," the Commission may require an assignment to the United States of the right to enforce such liability or to share in any money received in satisfaction thereof, or it may require the beneficiary to prosecute an action for damages in his own name. Refusal to make such assignment or to prosecute such action, when requested by the Commission, shall forfeit all right to compensation. This section also provides that if the Commission shall realize on such claim against third persons, either by suit or settlement, it shall apply the net proceeds to reimbursing the " Employees' Compensation Fund " for pay-

ments theretofore made, and any surplus remaining shall
be paid to the beneficiary and credited on future compen-
sation payable for the same injury. If the amount of
recovery exceeded the payments made and to be made,
obviously the beneficiary would be entitled to the excess.

Section 27 also provides for cases in which death or
injury, for which compensation is payable under the act,
is caused under circumstances " creating a legal liability
in some person *other than the United States* to pay dam-
ages " but in which the beneficiary, instead of the Com-
mission, receives the proceeds of suit or settlement. Here
it is required that such beneficiary shall refund to the
United States from such proceeds the amount of any com-
pensation that has been paid to him by the Government
or shall credit the money so received upon any compen-
sation payable to him for the same injury.

Plainly, by these two sections Congress deals with the
liability of persons " *other than the United States* " to
employees entitled to compensation under the act, not
for the purpose of increasing that compensation, but for
the purpose of reimbursing the Government for pay-
ments made and of indemnifying it against other amounts
payable in the future. The sections emphasize the dis-
position to treat the compensation provided for as ade-
quate for the injuries received, and they negative any
intention on the part of the Government to make further
payments.

But § 41 is even more convincing to the point we are
considering. A special proviso in this section declares
that if the injury or death for which compensation is
payable under the act is caused under circumstances
creating a legal liability in the Panama Railroad Com-
pany to pay damage therefor " no compensation shall
be payable until the person " shall release to the Rail-
road Company any right of action he may have against
it or until he assigns to the United States any rights

which he may have to share in any money or other property received in satisfaction of such liability.

When the Compensation Act was passed the United States was the owner of all the capital stock of the Panama Railroad Company and as such was ultimately liable for the torts of that company just as it became liable for the torts of the Director General of Railroads under the Federal Control Act, and, therefore, this manner of dealing with the liability of that company to employees negligently injured is highly persuasive as to the congressional intent.

This Compensation Act is the expression of a slowly developed purpose on the part of the United States (1908,—35 Stat. 556; 1912,—37 Stat. 74; 1916,—39 Stat. 742), to give compensation to its employees, who otherwise would be without remedy when injured by fault of the Government, and the provisions of it which we have discussed convince us that the congressional purpose was that when the compensation was accepted no further payment should be made by the Government. The act does not contemplate or provide for suits against the Government. On the contrary, it is essentially an act of justice or of grace on the part of the United States, elaborately and carefully worked out, and designed to compensate, promptly, without litigation or expense, all employees injured while in discharge of duty, in an amount, which, on the average, was thought adequate and just. The amount of the award in each case is determined by a specially constituted commission, without cost to the claimant, and it is allowed wholly without regard to the negligence of the Government or its employees.

On the other hand, the right to sue the United States under the Federal Control Act, applicable to all persons alike, is on the basis of negligence, precisely as if the Government were an operating common carrier corporation,

and it is subject to all of the expense, delay and hazard usual in cases of that character. The Compensation Act deals only with, and confers rights only upon, employees of the Government, who must necessarily be but a small percentage of those authorized to sue under the Federal Control Act, and it is impossible for us to conclude that Congress intended by the enactment of the latter law to allow an employee to claim and receive the compensation specially provided for him under the former and then, while enjoying that benefit, to institute suit against the Government under the Federal Control Act, which might require it to make further payment for the same injury and which must, in all cases, subject it to expensive, harrassing and often long protracted litigation.

We find no language in the Federal Control Act inconsistent with the distinct expression of purpose on the part of Congress which we have found in the Compensation Act, to treat the payments under it as sufficient and final, and for the reasons stated in the discussion herein of the latter act and because the petitioner elected to pursue to payment the remedy given him thereunder, we agree with the Circuit Court of Appeals that his right of action asserted in this case was barred and the judgment of that court is therefore

*Affirmed.*