**DAVIS, Director General, v. GRIFFITH et al.**

No. 12649—Opinion Filed May 7, 1924.

Rehearing Denied Nov. 12, 1924.

Second Rehearing Denied Jan. 24, 1925.

**Railroads—Federal Control—Procedure and Rules of Evidence.**

It was not the intention of the Federal Control Act to change the rights of litigants nor to alter or abrogate the rules of evidence by which those rights might be established, as theretofore recognized and enforced in the various states, unless the existence of such rights and the means of their enforcement ran counter to the paramount purposes of the government, in its mobilization of the country's resources. (Mo. Pac. Ry. Co. v. Ault. 256 U. S. 554; Dahn v. Davis, 258 U. S. 421.) Therefore, a rule of law recognized and enforced in this state prior to federal control, which rendered a dominant carrier liable for negligence occurring on one of its subservient lines and the rules of evidence and degree of proof by which such dominant control might be shown were not abrogated by the Federal Control Act, because not obnoxious to any purpose of the government.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; E. D. Oldfield, Judge.

Action by Frank Griffith and L. D. Alexander, against James C. Davis, Director General Railroads, to recover damages to a shipment of cattle. Judgment for plaintiffs, and defendant brings error. Affirmed.

This action was commenced in the district court of Oklahoma county, February 2, 1921, by Frank Griffith and L. D. Alexander filing their petition in said court against James C. Davis, Director General of Railroads, in which said petition it was alleged in substance: That on or about November 30, 1919, plaintiffs delivered to the defendant at Amarillo, Tex., 699 head of cattle for shipment to Oklahoma City, Okla.; that said cattle were loaded in cars which were muddy and filthy and not properly bedded; that there was unreasonable delay in the transportation of said cattle, and that by the negligence of the defendant, his servants, and employes in failing to properly bed said cars before loading the cattle, and by the unreasonable delay in the transportation of said cattle plaintiffs suffered damage in the death and crippling of a number of said cattle and of shrinkage in weight in the remainder in the total sum of $2,999.60.

Defendant answered by general denial and the case was tried to a jury, resulting in a verdict in favor of the plaintiffs for $1,350. After unsuccessful motion for new trial, defendant has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiffs and defendant, respectively, as they appeared in the trial court.

C. O. Blake, W. R. Bleakmore, A. T. Boys, and W. F. Collins, for plaintiff in error.

Suits & Hall, for defendants in error.

Opinion by LOGSDON, C. The petition in error in this case assigns as error the overruling of the motion for a new trial, and under this assignment of error defendant presents six specifications of error, the first of which reads:

"The trial court erred in admitting over the objection of defendant the testimony of the witness Grimes respecting the reports filed by the Chicago, Rock Island & Pacific Railway Co. and the receiver of said railway company with the State Corporation Commission and the contents of said reports and in overruling the motions of defendant to exclude the same as evidence from the consideration of the jury."

In opening his argument under the above specification of error defendant uses this language:

"This action is based on an alleged cause of action arising out of the operation by the president of the railroad of the Chicago, Rock Island & Pacific Railway Company during federal control. The Director General and Agent in charge of that road is the sole defendant. The evidence indisputably shows that more than one-half the damage suffered by plaintiffs occurred on the Chicago, Rock Island & Gulf Railroad, the initial carrier, before the cattle reached the line of the Chicago, Rock Island & Pacific Railroad, yet recovery for the entire loss and damage was awarded against defendant in this case upon the erroneous theory that the Chicago, Rock Island & Gulf and the Chicago, Rock Island & Pacific Railroads were operated by the President as one road during federal control. The theory is based on the insubstantial contention of plaintiffs that the two railroads were so operated by their corporate owners prior to such control, from which it is insisted the inference arises that the President took charge of and operated both railroads as a unit. The trial court adopted this theory of plaintiffs and permitted them to introduce, as evidence in support thereof, the testimony of witness Grimes, and the reports made to the State Corporation Commission, of which we complain.

"It was the insistence of defendant in the trial court, and he urges here, that the railroad of the Chicago, Rock Island and Pacific Railway Company and that of the Chicago, Rock Island and Gulf Railway Company were severally taken possession of by the President under his war power, and that each such railroad was treated, used and operated during federal control as a separate, individual and distinct entity."

It is thus apparent that the question determinative of this appeal is the effect to be given to the federal control act as it may apply to this particular shipment of cattle. It is insisted by defendant that by reason of federal control the Chicago, Rock Island & Pacific Railway Co. and the Chicago, Rock Island & Gulf Railway Co. are distinct and separate transportation systems, and that evidence as to the control of the Chicago, Rock Island & Gulf Railway Co. by the Chicago, Rock Island & Pacific Railway Co. was inadmissible for the purpose of fixing liability upon the latter company as the dominant company.

So much of section 10 of the federal control act as its material to be considered here reads as follows:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except insofar as may be inconsistent with the provisions of this act, or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law."

In Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, the Supreme Court of the United States in passing upon the above provisions of section 10 gave to it the following construction:

'The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President except insofar as such rights or remedies might interfere with the needs of Federal operation. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917; to cases where the cause of action arose before that date and the suit against the company was filed after it; and to cases where both cause of action and suits had arisen or might arise during federal operation. The Government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control."

In Dahn v. Davis, 258 U. S. 421, the following language is used:

"It was definitely held in Missouri Pacific Railroad v. Ault, 256 U. S. 554, that at all the times here involved, section 10 of the Federal Control Act permitted the government, through its director general of railroads, to be sued for any injury negligently caused on any line of railway in his custody precisely as a common carrier corporation operating such road might have been sued."

It seems clear from these holdings that the rules of law for the enforcement of rights against common carriers theretofore adopted and recognized by the various states were not to be abrogated or changed unless inconsistent with the ultimate objects of the government in its mobilization of the country's resources.

No question of service or of jurisdiction is raised in this case, so that the only ques-

tion presented under this specification of error is whether the defendant is liable for negligence occurring in the line of the Chicago, Rock Island & Gulf by reason of the Chicago, Rock Island & Pacific being in control and directing the operations of the former line. This is nothing more nor less than a rule of evidence—a method and degree of proof. Certainly there can be nothing in this obnoxious to the purposes and objects of the government. The testimony to which objection was made was that of the witness, W. E. Grimes, auditor for the Corporation Commission of Oklahoma. His testimony had reference to the annual report made to the corporation commission by the Chicago, Rock Island & Pacific Railway Co. for the year ending December 31, 1919, which, in effect, showed that the Chicago, Rock Island & Pacific Railway Co. had 100 per cent. control over the Chicago, Rock Island & Gulf Railway Co.

In St. Louis & S. F. Ry. Co. v. Sanford, 54 Okla. 185, 153 Pac. 650, the auditor of the Corporation Commission was a witness and gave testimony similar to that given by the witness, Grimes, in the instant case in order to show the dominance and control of the defendant in that case over the St. Louis, San Francisco & Texas Railway Co., and this court held that the testimony was competent and sufficient to go to the jury upon that question. It is in evidence further in this case that Sayre, Okla., was the first division point out of Amarillo, Tex., and that the train crew in charge of the train when it left Amarillo continued in charge thereof until it reached Sayre; that the dispatcher of the defendant at El Reno controls the movements of trains out of Amarillo for Oklahoma.

Since the holding in the Ault Case that, "the government was to operate the carriers but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers," and since, as was said in the Dahn Case, the director general was "to be sued for any injury negligently caused on any line of railway in his custody, precisely as a common carrier corporation operating such road might have been sued," it appears clearly that the rule announced by this court in the Sanford Case admitting the testimony of the Corporation Commission auditor for the purpose of showing the dominance and control of the defendant in that case should be held applicable to the testimony of the witness Grimes in this case, and that no error was committed by the court in admitting such testimony for the purpose of showing that the Chicago, Rock Island & Gulf was a part of the transportation system controlled and operated by the Chicago, Rock Island & Pacific, of which the defendant was the directing head. This testimony being competent for that purpose, it, together with the other testimony in the record, was sufficient to go to the jury upon the question of defendant's liability in this case, Wichita Falls & Northwestern Ry. Co. v. Puckett, 53 Okla. 463, 157 Pac. 112; St. Louis & S. F. R. Co. v. Sanford 54 Okla. 185, 153 Pac. 650; Lehigh Valley Ry. Co. v. Du Pont, 128 Fed. 840; Lehigh Valley Ry. Co. v. Delachesa, 145 Fed. 617.

The second and third specifications question the correctness of the court's instructions to the jury in paragraph 5 and the correctness of the court's ruling in refusing to give defendant's requested instructions numbered 2, 6, 10, 11, and 12. Defendant's requested instructions 2, 6, 10, 11, and 12 were based upon the theory that because a portion of the damage complained of was shown to have been caused upon the line of the Chicago, Rock Island & Gulf therefore the defendant was not liable for such damage, but in view of the conclusion reached under the first specification the refusal of these requested instructions was not error. The fifth paragraph of the court's instructions was based upon the theory that the control and operation of the Chicago, Rock Island & Gulf, if shown by the evidence, would make the defendant liable in this case even though a portion of the damages complained of occurred upon that line and not upon the line of the Chicago, Rock Island & Pacific. This instruction correctly stated the law under the conclusion above reached.

The remaining specifications of error present the same question heretofore discussed from different view points, but the conclusion reached upon the first proposition makes the contentions under these remaining propositions untenable.

It is, therefore, concluded upon the whole case that no error prejudicial to the substantial rights of the defendant was committed by the trial court in overruling the motion for new trial, and that the judgment of the trial court herein should be in all things affirmed.

By the Court: It is so ordered.