JEFFERSON v. UNITED STATES.
Civil Action No. 3692.

District Court, D. Maryland.
Oct. 23, 1947.

210

Morris & Rosenberg, of Baltimore, Md. (Tydings, Sauerwein, Archer, Benson & Boyd, of Baltimore, Md., of counsel), for plaintiff.

Bernard J. Flynn, U. S. Atty., and Jas. B. Murphy, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

This case presents another new, difficult and unprecedented question arising under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq. The question is whether the Act authorizes a suit by a former member of the Military Forces to recover damages allegedly caused by a negligent abdominal operation performed on the soldier on or about July 3, 1945, by an Army surgeon in the State of Virginia (the plaintiff being a citizen of Maryland), while both were on active duty. The United States has moved to dismiss the complaint on the ground that such a suit is not within the coverage of the Act.

The argument in support of the motion advances the contentions that the Act properly construed was not intended by Congress to authorize suits by members of the Military Forces of the United States due to injuries sustained by the negligence of another member of the Forces, while on active duty, because compensation for such damages has otherwise been provided by the United States for the benefit of veterans by an elaborate system of disability and pension allowances which have been long in force, 38 U.S.C.A. §§ 151–205, and 38 U.S.C.A. c. 12, § 700 et seq., and Veterans' Regulations pursuant thereto. Support for this contention is based largely upon the cases of Dobson v. United States, 2 Cir., 27 F.2d 807, certiorari denied 278 U.S. 653, 49 S.Ct. 179, 73 L.Ed. 563; O'Neal v. United States, D.C.N.Y., 11 F.2d 869, affirmed 2 Cir., 11 F.2d 871, and Bradey v. United States, 2 Cir., 151 F.2d 742, where, in suits brought against the United States under the Public Vessels Act, 46 U.S.C.A. §§ 781–790, it was held the general language of the Act allowing "A libel in personam in admiralty may be brought against the United States * * * for damages caused by a public vessel of the

United States", is not sufficient to impose liability on the United States in a suit brought by a seaman on a public vessel for alleged injuries due to the negligence of other members of the crew. It is further argued that there is a special relationship between the United States and members of its Armed Forces, the nature of which makes it unreasonable to think that Congress intended to extend the benefits of the Act to such a situation as is here set up in the complaint because, it is further said, the status of a member of the Armed Forces with relation to the government is not the normal master-servant or employer-employee status wherein the doctrine of "respondeat superior" is applicable. It is also pointed out that the special nature and some of the incidents of this special relationship have recently been set forth by the Supreme Court in United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604. And in this latter connection it may possibly be further suggested that such a suit could not have been fairly within the contemplation of Congress because the general statutes, duties and incidents of military service are necessarily matters of federal law, whereas the liability imposed upon the United States by the Act is only—

"on account of damage to or loss of property or on account of personal injury or death, * * *, caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death, *in accordance with the law of the place where the act or omission occurred.*" (Italics supplied)

■ While this argument has plausibility and force, I have so far not been able to reach the conclusion that it is convincing in view of the scope of the wording (both affirmative and negative) of the Act itself. The most relevant provisions in the Act are these. Section 402(b) of the Act provides—

" 'Employee of the Government' includes * * * members of the military or naval forces of the United States" and section 402(c) provides—

" 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

Section 410(a) is the principal affirmative imposition of liability and conferring of jurisdiction on the district courts. The liability imposed is for money only on account of damages caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable, in accordance with the law of the place where the act or omission occurred.

■ Section 421 sets up 12 separate and distinct classes of cases as exceptions to the general liability imposed by section 410. Here the only possibly relevant exception is section 421(j) reading—

"Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." but it is obvious that this exception is not applicable in the present case. Skeels v. United States, D.C.La., 72 F.Supp. 372. In construing and applying the statutory language we therefore have an affirmative section which literally is sufficiently broad to cover the instant case; and, while there are numerous excepted situations, none of the latter are applicable, with the seeming result that the literal wording of the affirmative provision for liability should not be whittled down by construction unless there is some very controlling reason therefor.

■ Although the Federal Tort Claims Act, approved August 2, 1946, was the culmination of a long congressional history of consideration of similar or related Acts, counsel have not been able to refer me to any particular legislative history of the Act or its antecedents in subject matter which throws any floodlight upon the question now presented. But possibly there may be some significance in the fact that many of the prior bills upon the subject did affirmatively include in the mentioned exceptions from coverage of the law, claims for which compensation was provided by the Federal Employees' Compensation Act, 5 U.S.C.A.

§ 751 et seq., or by the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. §§ 421–576.[1] As we have seen, the present Act is silent in this respect and it has been said that "prints of the bill, S. 2177, in the various stages of its enactment, the committee reports and the hearings, fail to mention these statutes or give any reason for their non-inclusion. Under such circumstances, a presumption arises that where a claim is cognizable under the present law, which is not barred by the two mentioned statutes relating to federal employees or to world war veterans such claim may under the election of remedies theory, be prosecuted hereunder." See article entitled "Federal Tort Claims Act—A statutory interpretation" by Gottleib, 35 Georgetown Law Journal, 1, 57. I have not been able to find in the World War Veterans' Act above referred to any specific provision with respect to the effect of the acceptance of the benefits provided thereby; nor have I found any judicial decision that acceptance of benefits under that Act precludes resort to other possibly available legal remedies; (but see Commers v. United States, D.C., 66 F.Supp. 943) although it has, of course, been decided with respect to the Federal Employees' Compensation Act (covering civilian as distinct from military personnel) that acceptance of benefits under that Act precludes suits under other federal Acts, under the doctrine of election of remedies. Brady v. Roosevelt S. S. Co., 317 U.S. 575, 577, 581, 63 S.Ct. 425, 87 L. Ed. 471; rehearing denied 318 U.S. 799, 63 S.Ct. 659, 87 L.Ed. 1163; Dahn v. Davis, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696; Militano v. United States, D.C.N.Y., 55 F. Supp. 904; United States v. Marine, 4 Cir., 155 F.2d 456, affirming D.C.Md., 65 F.Supp. 111.

I am not satisfied that the reasoning of the Dobson case, supra, and its successors should be applied here. The language of the Public Vessels Act which was there involved was very general indeed (but see Canadian Aviator, Ltd., v. United States, 324 U.S. 215, 226, 65 S.Ct. 639, 89 L.Ed. 901). That Act provided that the United States could be sued "for damages caused by a public vessel of the United States". It did not expressly provide what classes of

---

[1] For instance, see Congressional Record, Vol. 86, Part II, 76th Cong., 3d Sess.1940, pp. 12015–12032, where the House was debating HR 7236, the major provisions of which were quite similar to the present Tort Act. See particularly the 12 exceptions contained in section 303 of this particular Bill, p. 12030. It will be noted that the Bill then under discussion in this section 303 contained 12 excepted classes of liabilities, the majority of which are the same as those in the Tort Claims Act. But it is important to note two exceptions. Thus, subparagraph 8 of section 303 of H.R.7236, contained the following exception which is *not* in the present Act;

"8. Any claim for which compensation is provided by the Federal Employees Compensation Act, or by the World War Veterans' Act of 1924, as amended."

And the indications from the discussion of the provisions of HR7236 seem to be to the effect that, if that exception had not been contained in that Bill, the result would have been that military personnel could have sued under the Act unless the claim also fell under subparagraph 11 of the same proposed Act which read—

"Any claim arising out of the activities of the military or naval forces, or the Coast Guard, during time of war."

It may also be important to note that there is possibly a very important difference between the wording of the exception (11) just quoted as contained in the former proposed Act, and the wording of the related exception (j) in the present Act. The latter reads—

"Any claim arising out of *combatant* activities of the military or naval forces, or the Coast Guard, during time of war." (Italics supplied)

Apparently the word "combatant" was inserted in the present Act during the debate in the House by an amendment offered by Mr. Monroney in charge of the Bill in the House. The effect of the insertion of the word "combatant" obviously further restricts the exception; but apparently there was no explanation or discussion of the matter. See Gottlieb, 35 Georgetown Law Journal, p. 50.

The complaint in the instant case alleges that the negligent surgical operation occurred at Ft. Belvoir, Virginia, July 3, 1945, which, of course, was during the time of war at least with Japan; but it seems clear enough that the plaintiff's claim cannot be said to have arisen out of *combatant* activities during time of war.

persons could or could not bring such suits; but did limit liability to damages caused by the vessel. It was an entirely reasonable construction of that general language o hold that it was not the intention of Congress to impose liability for personal damage to members of the ship's company arising on the ship but not caused by the ship itself as a juridical entity, in view of the long established policy of the United States embraced in statutes providing benefits for navy personnel.

By contrast the affirmative provision of section 410(a) of the Tort Claims Act is much more explicit. The section affirmatively confers jurisdiction on the district courts to—

"render judgment on *any* claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages. Costs shall be allowed in all courts to the successful claimant to the same extent as if the United States were a private litigant, except that such costs shall not include attorneys' fees." (Italics supplied)

(Amended August 1, 1947 with respect to allowance of compensatory damages in lieu of punitive damages in certain cases. Public law, 324, 80th Cong., ch. 446, 1st. Sess.)

The wording of the Tort Claims Act is more analogous to the Suits in Admiralty Act than to the Public Vessels Act. Title 46 U.S.C.A. § 742, Suits in Admiralty Act, § 2, provides—

"In cases where if such vessel were privately owned or operated * * * a pro-ceeding in admiralty could be maintained at the time of commencement of the action herein provided for, a libel in personam may be brought against the United States * * * provided that such vessel is employed as a merchant vessel * * *." And therefore cases under the Suits in Admiralty Act would seem to be more persuasive in their applicability here than cases decided under the Public Vessels Act. In United States v. Marine, 4 Cir., 155 F.2d 456, affirming D.C.Md., 65 F.Supp. 111, it was held that a United States Custom Inspector injured in the discharge of his duties in consequence of a defective landing ladder from a ship owned by the United States, was entitled to recover damages in a suit against the United States under the Suits in Admiralty Act, and that his exclusive remedy was not, as contended for by the government, under the Federal Employees' Compensation Act. Members of the ship's company, for instance seamen employed by the United States, may and often do successfully sue under the Suits in Admiralty Act. See also for somewhat analogous cases, Dahn v. Davis, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696; Payne v. Cohlmeyer, 7 Cir., 275 F. 803.

■■ But aside from the difference in wording between the Public Vessels Act and the Suits in Admiralty Act and the Tort Claims Act, it is to be importantly borne in mind that the last mentioned Act represents a marked departure by the United States with respect to the waiving of sovereign immunity. It is a comprehensive Act which, subject to the exceptions therein contained, acknowledges liability of the sovereign for injuries and damages to property and persons generally where the damage results from negligence in the performance of duties by its employees. This comprehensive Act was passed subsequent to the various special Acts waiving immunity under certain conditions and to a limited extent, as in the Public Vessels Act and the Suits in Admiralty Act. By one of the exceptions it does not apply to claims or suits in admiralty against the United States under the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752 inclusive, or the Public Vessels Act, 46 U.S.C.A. §§ 781–790 inclusive. But outside of the specific exceptions, as al-

ready noted, it does apply to "any claim against the United States, for money only, accruing on and after January 1, 1945". It is also made expressly clear that it does apply (subject to exceptions) to damages occasioned by negligent action of members of the military or naval forces of the United States acting in the line of duty. It therefore clearly covers claims against the government by virtue of negligent acts of military personnel, damaging private citizens and even civilian federal employees who have not accepted benefits under the Federal Employees' Compensation Act.

The only open question here seems to be whether the comprehensive authority "to adjudicate any claim" should be narrowed by construction to exclude a claim by military personnel arising from the negligent action of other military personnel while both were on active governmental service, by reason of the special relationship existing between the government and its Military Forces, and particularly in view of the administrative disability benefits provided for disabled veterans under long established congressional legislation.

The Assistant United States Attorney contends that the inclusive phrase "any claim" must be so narrowed by construction. In support of his position he particularly relies upon Goldstein v. State of New York, 1939, 281 N.Y. 396, 24 N.E.2d 97, 129 A.L.R. 905. That case held that a soldier of the New York State Militia was not an employee of the State within the meaning of its Workmen's Compensation Law, Consol.Laws, c. 67, and also that the State was not liable to the Administrator of the soldier killed by the alleged negligence of fellow soldiers on active duty because the latter were not officers and employees of the State within the meaning of the Court of Claims Act which waived the State's immunity from liability for the tortious acts of its officers and employees. The decision in that case, on the basis on which it was put, is distinguishable from the present case because the Tort Claims Act does expressly provide in sections 402 (b) and (c) that employees of the government include military and naval personnel of the United States acting in the line of duty. But it may be said that the philosophy of the opinion in the case is broader than the actual decision. Thus, in the discussion (at page 403 of 281 N.Y., at page 100 of 24 N.E.2d) it was said:

"The statement that the State may be made liable in damages to a soldier or his dependents, because of injuries inflicted upon him through the negligence of a brother soldier or officer, except as provided in the Military Law, is rather startling. We think that the general understanding has always been that for injuries suffered by a soldier in active service the government makes provision by way of a pension. That this State has done in the Military Law, §§ 220–224, wherein it is provided when an allowance may be made, for what it may be made, the procedure to be followed and the amount that may be allowed. In fact, a complete system is set up for handling such claims."

"To justify a decision that another concurrent remedy has been created whereby the State may be made liable in unlimited amounts requires a statute to that effect, the meaning and intent of which is unmistakable."

And in holding that military personnel in the State Militia were not officers or employees of the State, it was further said (at page 405 of 281 N.Y., at page 101 of 24 N.E.2d):

"Any other construction would be contrary to the history of military organization and control. * * * True it is that if the word 'officers' is given its broad meaning it would include every officer engaged in performing a duty placed upon him by law, including the Governor, judges, members of the Legislature and all others occupying an official position in the State. Such an interpretation of the statute would lead to an absurd conclusion. The history of the development of our form of government demonstrates that officials in performing certain functions of government cannot by their official acts create a liability against the State by their negligent performance. The language used in former section 12-a must be given a reasonable construction, consistent with our conception of governmental functions and public policy.

"It is urged that as the State, by former section 12-a, 'consents to have its liability for such torts determined in accordance with the same rules of law as apply to an action in the supreme court against an individual or a corporation,' it, therefore, follows that the State waives its immunity from liability in all cases for the tortious acts of its officers and makes itself liable if an individual or a corporation would be liable on the same facts. The argument overlooks the fact that under all military law the army constitutes a class separate and apart from the civil officers of the State. In this State it is governed by the Military Law embodied in the statute which provides in detail for the adjustment of claims like the one here in question."

Something of the same philosophy was many years ago seemingly expressed by the High Court of Australia in Enever v. The King, 3 Commonwealth Law Reports of Australia, p. 969 (1906). In that case the court dealt with the Tasmania Crown Redress Act of 1891 which gave a right of action to persons with just claims against the government "in respect of * * * any act or omission, neglect or default of any officer, agent or servant of the Government of Tasmania which would be the ground of an action at law or suit in equity between subject and subject." It was held by the court that suit would not lie at the instance of a person wrongfully arrested by a constable as the latter was not to be properly considered as an "agent or servant" of the appointing power because the exercise of his authority was original with his official position and not delegated, and he therefore acts on his own responsibility; and furthermore, as expressed in the headnote on page 970, as the Redress Act allowed suits only which might have been brought "between subject and subject" it was not to be construed as intending to create a responsibility on the government for the acts of its peace officers whom it had appointed, that not being a liability which had ever existed against any subject exercising similar powers.

It is arguable that this judicial approach is relevant and ponderable here. In creating an Army the federal government is, of course, exercising a fundamentally important constitutional power expressly conferred; and members of the Military Forces have from time immemorial had a special relationship to the government which, of course, had (at least prior to the present Tort Claims Act) no liability to suits for injuries or disabilities incurred by the soldier in the military service, [Commers v. United States, D.C.Mont., 66 F.Supp. 943] other than the purely administrative remedies provided in voluntary legislation regarding pensions and disability compensation allowances presently contained in the so-called World War Veterans' Act, supra.

Possibly it may also be argued that to sustain the cause of action set up in this case really creates a heretofore non-existent tort, it was not within the intention of Congress, in view of the language of section 410(a) that the government is to be liable only "under circumstances where the United States, if a private person, would be liable to the claimant for such damage * * * in accordance with the law of the place where the act or omission occurred." More concretely, it may perhaps be said that as the Army surgeon was performing an official act in good faith, he was personally not liable and therefore the government would not be liable. And then again, the government is to be liable only "in accordance with the law of the place where the act or omission occurred", which, in this case, was in the State of Virginia. There has been no argument submitted by counsel as to the law of that particular State with respect to the subject matter, and if the laws of the several States are to control with respect to Army surgeons, there may be resultant lack of uniformity in the administration of the Act dependent upon varying laws of the particular States rather than on uniform federal law applicable to army officers wherever stationed temporarily. In this connection it was said by Mr. Justice Rutledge in his opinion in United States v. Standard Oil Co., supra, in considering the question as to whether the United States was subrogated to the civil rights of a soldier injured by a private party [67 S.Ct. 1609]—

"Not only is the government-soldier relation distinctively and exclusively a creation of federal law, but we know of no

good reason why the Government's right to be indemnified in these circumstances, or the lack of such a right, should vary in accordance with the different rulings of the several states, simply because the soldier marches or today perhaps as often flies across state lines."

But relevant, or indeed important even, as these considerations may be I am not presently convinced that the broad and comprehensive language of the Tort Claims Act should be narrowed by construction to exclude a case not included in the numerous exceptions expressed in the Act itself. The contention to the contrary would seemingly bar any redress to a soldier for the negligent acts of other soldiers under any circumstance (combatant activities of course being specially excepted by the Act). Thus, for instance, a soldier on furlough injured by the negligent action of another soldier on active duty as a result of an automobile collision, would not be entitled to sue under the Tort Claims Act.

In view of the novelty and difficulty of the question presented by the motion to dismiss, I have concluded that it should be overruled at this time without prejudice. Perhaps the proper application of the Act will become clearer on further argument and consideration and the possible narrowing of issues by the developed facts of the particular case.

At the hearing on the motion counsel for both parties agreed on the fact that at the time of the filing of the complaint in this case (July 31, 1947) and at the present time, plaintiff has been in receipt, under the World War Veterans' Act above mentioned, of a monthly disability allowance of $138.00, but this fact does not appear in the complaint and is not now in the record by way of defense or otherwise. Counsel for the plaintiff stated as his position in regard to this payment that it was in mitigation of damages and did not operate as a bar to the suit. Counsel for the defendant, however, has based his motion to dismiss the complaint not on this specific fact but on the general construction of the inapplicability of the affirmative provision of the Act to this case. As the particular point is not now in the record and has not been fully argued, I consider it premature to base any decision thereon at this time.

Counsel may present the appropriate order in due course.