**McKENNEY v. UNITED STATES.**

Nos. 25256–R, No. 25710. In Admiralty.

United States District Court,
N. D. California, S. D.

Aug. 7, 1951.

122

Albert Michelson and Newell J. Hooey, both of San Francisco, Cal., proctors for libelant.

Chauncey F. Tramutolo, U. S. Atty., Keith R. Ferguson, Sp. Asst. to the Atty. Gen., and J. Stewart Harrison, Atty., Department of Justice, all of San Francisco, Cal., proctors for respondent.

ROCHE, Chief Judge.

Libelant was employed in a civilian capacity as junior third mate aboard the USAT General C. G. Morton, a public vessel owned and operated by the respond-ent. On July 17, 1948, while en route in the Pacific Ocean, the master of the vessel ordered an emergency lifeboat drill to take place under the command of the libelant.

Participants in the drill consisted of the libelant, a crew of six seamen and two passengers. The libelant stood in a crouched position on the stern thwart of the lifeboat, holding on to the tiller with his left hand. Two of the crew stood in the bottom of the lifeboat, fending it off from the vessel during the lowering operations. All the other occupants appear to have been seated.

Hanging from a cable stretched between the davits were approximately four manlines which extended down into the lifeboat. These were played out and remained hanging as the boat was lowered. One of the purposes served by these lines is to provide a support for those in the boat to hang on to in case some accident occurs as the boat is being lowered.

The lifeboat involved herein had a built-in releasing gear, the purpose of which is to release the boat from the falls and enable it to become free of the vessel. This releasing gear was a manual one which required a certain physical effort to operate. The libelant had assigned the duty of operating the releasing gear to the boatswain Nelson, a member of the lifeboat's crew.

As the lifeboat was being lowered, the boatswain Nelson tripped the releasing gear without an order to do so from the libelant. The boat thereupon dropped into the water, falling a distance which has been variously estimated as being between 7 feet and 15 feet.

The force of the fall caused the seams of the boat to split. None of the occupants of the lifeboat, except the libelant, suffered anything but slight injuries. The libelant sustained a comminuted fracture of the right ankle and the right leg above the ankle. Immediately after the accident the libelant was taken aboard the vessel and a cast was applied to his injured leg.

On the following day he was taken ashore and placed in an army hospital in Okinawa, where he remained for six days.

He was then flown to San Francisco, with delays at various places, and on or about August 14, 1948, he was placed in the U. S. Marine Hospital, where he was received and treated as a seaman. He remained in the Marine Hospital until about November 14, 1948, when he became an out-patient until his discharge on or about May 31, 1949.

While the libelant was a patient in the Marine Hospital he signed a claim for compensation under provisions of the Federal Employees' Compensation Act, 5 U.S. C.A. § 751 et seq. However, he subsequently declined to accept the compensation that was tendered him in response to this application.

Although the prognosis of his physician is that the probabilities are equal as to whether his condition will improve or become worse, the libelant appears to have suffered a serious disability.

The respondent contends that this action is barred either because libelant's exclusive remedy is the Federal Employees' Compensation Act or because he made an election of remedies by receiving hospital benefits and applying for compensation under that Act. The respondent also denies liability on the grounds that libelant's negligence was the sole cause of his injuries and that libelant assumed the risks of his own negligent and improper seamanship.

The issues presented for decision are: (1) whether, for any reason, the Federal Employees' Compensation Act is a bar to the present cause of action; (2) whether there was any negligence for which the respondent is liable; and (3) whether there was any negligence on the part of the libelant.

■■■ While the Federal Employees' Compensation Act is not the exclusive remedy of the libelant in this case, Johnson v. U. S., 4 Cir., 1950, 186 F.2d 120; Gibbs v. U. S., D.C., 1950, 94 F.Supp. 586; an election to proceed under its provisions would serve to bar the instant cause of action. Dahn v. Davis, 1922, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696. However, only actual acceptance of compensation under the FECA constitutes an election which would extinguish the right to bring action against the government. Vatuone v. U. S., D.C., 1950, 94 F.Supp. 592; Mandel v. U. S., D.C., 1947, 74 F.Supp. 754. Since the libelant received hospital benefits as a seaman and since he refused to accept the monetary compensation that was offered him under the FECA, he did not elect to proceed under that Act and he is entitled to pursue his remedy in the present action.

■■■ The Court is convinced that the negligence of the boatswain Nelson was the proximate cause of the accident leading to libelant's injury. Although the libelant was in command of the lifeboat it does not appear that he exercised his command so negligently as to impose upon himself the responsibility for its premature release. The evidence discloses the existence of a duty on the part of any seaman whose function it is to operate the releasing gear not to act until the order is given by the one in command of the boat.

While the boatswain Nelson did not testify, it seems clear that he was an experienced enough seaman at the time of the accident to have been aware of his duty in this matter and his failure to wait for the necessary instruction from the libelant was a violation of such duty. It is true that the libelant did not caution Nelson, at the start of the drill, to await the requisite order, but such an instruction was unnecessary in view of Nelson's experience and known duty.

The Court finds, therefore, that the respondent is liable for the boatswain's negligence which was the proximate cause of the described accident.

■■■ However, the Court is also convinced by the evidence that the libelant's own negligence contributed to the cause of his injuries. Although he contends that it was proper seamanship for him to have been standing on the stern thwart as the lifeboat was being lowered, there is compelling testimony to the contrary.

The libelant was standing in an open and exposed position. Above the thwart there was only eight inches of freeboard up to the gunwales and his sole means of physical support consisted of the tiller,

upon which he kept one hand. Yet the evidence discloses the fact that the tiller was not in a fixed position, but, rather, that it was subject to a swinging, lateral movement. The libelant testified that he was too occupied, because of this position, to be able to make use of a man-line to try and save himself when the boat fell.

Since none of the other occupants of the lifeboat, not even the above mentioned seamen who were standing in the bottom of the boat, suffered anything but minor injuries, it seems evident that the libelant could have placed himself in a safer position. The testimony is substantial that he could have safely and fully performed his duties while seated on the thwart or while standing in the bottom of the boat. When viewed in light of all the evidence, the Court cannot conclude that it was proper seamanship for the libelant to have stood on the stern thwart of the lifeboat as it was being lowered.

 While the Court finds that the negligence of the libelant contributed to his injuries, such negligence is not a bar to his recovery, but is to be considered in mitigation of damages, for the rule of comparative negligence, rather than that of assumption of risk, is to be applied. Socony-Vacuum Co. v. Smith, 1939, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; Beadle v. Spencer, 1936, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082; Thurston v. U. S., 9 Cir., 1950, 179 F.2d 514.

Both parties have stipulated as to libelant's loss of maintenance from November 16, 1948, to May 31, 1949, a total of 197 days, at the rate of $6.00 per day, totaling $1,182.00.

 There remains for consideration the amount of damages to be awarded. Because of his disability the libelant is unable to return to work as a seaman. However, he is able to work as a welder, an occupation he seems to have followed for a longer period than that of a seaman. While his salary at the time of the accident was somewhat larger, he is, at present, able to earn a substantial living wage. It was stipulated that he earned $1903.46 from part time jobs between the date of the accident and the date of this trial. An additional item to be considered is the pain and discomfort that has been caused by libelant's injuries. Upon a full consideration of all the evidence, the Court believes that the total award for damages should be the sum of $18,500.00, from which there should be deducted fifty per cent, or $9,250.00, as the amount attributable to the libelant for his own negligence. Thus, the libelant is awarded damages in the sum of $9,250.00.

It Is Ordered that there be entered herein, upon findings of fact and conclusions of law in accordance with the foregoing, a decree in favor of libelant and against respondent as follows: maintenance in the total amount of $1,182.00; and damages in the total amount of $9,250.00. It is further ordered that each party bear its own costs herein.